Page 2

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District Northern District of Georgia |
|---|---|

| Name (under which you were convicted): | Docket or Case No.:<br>2:02-CR-038-RWS |
|---|---|

| Place of Confinement:  United States Penitentiary<br>Terre Haute. | Prisoner No.:<br>45795-019 |
|---|---|

| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) |
|---|---|
| v. | William Emmett LeCroy, Jr. |

### MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: _____
United States District, Northern District of Georgia
Gainesville Division


(b) Criminal docket or case number (if you know): 2:02-CR-038-RWS

2. (a) Date of the judgment of conviction (if you know): February 17, 2004

(b) Date of sentencing: March 10, 2004

3. Length of sentence: death

4. Nature of crime (all counts): carjacking resulting in death,
18 U.S.C. Section 2119(3)




5. (a) What was your plea? (Check one)

   (1)  Not guilty ☒         (2)  Guilty ☐         (3)  Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count
   or indictment, what did you plead guilty to and what did you plead not guilty to? _____




6. If you went to trial, what kind of trial did you have? (Check one)      Jury ☒      Judge only ☐

Page 3

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☒

8. Did you appeal from the judgment of conviction?    Yes ☒    No ☐

9. If you did appeal, answer the following:

(a) Name of court: __United States Court of Appeals for the Eleventh Ciruit__

(b) Docket or case number (if you know): _04-15597-P_____

(c) Result: __Affirmed_____

(d) Date of result (if you know): __March 2, 2006_____

(e) Citation to the case (if you know): __United States v. LeCroy, 441 F.3d 914 (11th

(f) Grounds raised: __See Exhibit A_____    Cir. 2006)

_____

_____

_____

_____

_____

(g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☒   No ☐

If "Yes," answer the following:

(1) Docket or case number (if you know): __06-7877_____

(2) Result: __writ of certiorari denied_____

(3) Date of result (if you know): __April 23, 2007_____

(4) Citation to the case (if you know): __United States v. LeCroy, 127 S.Ct.__ 2096

(5) Grounds raised: __See Exhibit B_____    (2007)

_____

_____

_____

_____

_____

10. Other than the direct appeals listed above, have you previously filed any other motions,
petitions, or applications concerning this judgment of conviction in any court?
Yes ☐   No ☒

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: __N/A_____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ❑  No ❑

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: _____N/A_____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ❑   No ❑

(7) Result: _____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)  First petition:     Yes ❑  No ❑

(2)  Second petition:   Yes ❑  No ❑

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: _____

_____

_____

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the <u>facts</u> supporting each ground.

GROUND ONE: _____

_____

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Attached hereto as Exhibit "@" are my grounds for relief with supporting facts along with relevant information regarding whether the issue had been previously raised. All issues not previously raised are raised now because they involve the ineffectiveness of trial counsel and appellate counsel,or because they involve facts not previously known.

_____

_____

_____

_____

_____

**(b) Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑    No ❑

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑ No ❑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____

**GROUND TWO:** _____

_____

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❏   No ❏

    (2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❏   No ❏

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❏   No ❏

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❏   No ❏

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❏   No ❏

    (6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____

GROUND THREE: _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**(b) Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑    No ❑

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑    No ❑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

　　Yes ❏　No ❏

(4) Did you appeal from the denial of your motion, petition, or application?

　　Yes ❏　No ❏

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

　　Yes ❏　No ❏

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____

GROUND FOUR: _____

_____

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(b)  **Direct Appeal of Ground Four:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ❏  No ❏

(2)  If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❏  No ❏

(2)  If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ❏   No ❏

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ❏   No ❏

(5)  If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ❏   No ❏

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: <u>All grounds that have not been previously presented</u> <u>either involve ineffective assistance of counsel, whether</u> <u>the means of proposed execution violate the Eighth Amendment,</u> <u>or facts not previously known.</u>

_____

_____

_____

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?    Yes ❑  No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

_____

_____

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _____

_____

(b) At arraignment and plea: _____

_____

(c) At trial: <u>Pretrial, trial, sentencing and appeal: Stephanie Kearns,</u> <u>Brian Mendelsohn, Suite 1700, The Equitable Building, 100 Peachtree St.</u> (d) At sentencing: <u>Atlanta, GA 30303; Dan Summer, P.O.Box 921, Gainesville,</u> <u>GA, 30503, Paul Kish, 1700 South Tower, 225 Peachtree St., Atlanta, GA</u> 30303

(e) On appeal: _____

_____

(f) In any post-conviction proceeding: _____

_____

(g) On appeal from any ruling against you in a post-conviction proceeding: _____

_____

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?    Yes ❏ No ☒

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ❏ No ☒

   (a)  If so, give name and location of court that imposed the other sentence you will serve in the future: _____

_____

   (b) Give the date the other sentence was imposed: _____

   (c) Give the length of the other sentence: _____

   (d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?   Yes ❏   No ❏

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.* _____ N/A _____

_____

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:
A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —
(1) the date on which the judgment of conviction became final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Page 14

Therefore, movant asks that the Court grant the following relief: __The vacation of the__

__Movant's conviction and sentence__

or any other relief to which movant may be entitled.


_Sandra Michaels_                                   _John R. Martin_
Attorney                                       Signature of Attorney (if any)
Sandra Michaels                                John R. Martin


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on ___N/A___ _____ (month, date, year).


Executed (signed) on _April 21, 2008_ (date).

_William Le Cray Jr._
Signature of Movant


If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion. _____


## IN FORMA PAUPERIS DECLARATION

_____

[Insert appropriate court]

* * * * *

## EXHIBIT "A"

I.     Whether the lower court should have instructed on the lesser-included offense of "simple" carjacking?

II.     Whether the evidence was sufficient for conviction?

III.     Was the Fourth Amendment violated when police took notes from LeCroy's vehicle during a purported inventory search?

IV.     Whether the lower court's application of Fed.R.Crim.P. 12.2(b)(2)(B) violated the Eighth Amendment by preventing LeCroy from presenting relevant mitigation evidence?

V.     Whether the Constitution was violated when the prosecution was allowed to introduce evidence in aggravation that went beyond the issues included in the Notice of Death?

VI.     Did the trial court err when instructing the jury on the non-statutory aggravating circumstance of future dangerousness by failing to tailor this issue to the facts?

VII.     Whether it was error to allow Agent Branyon to testify as to his opinion about blood transfer patterns?

VIII.     Whether evidence of bad acts from 1991 was improperly admitted under Fed.R.Evid 404(b)?

IX.     Does Ring v. Arizona, 536 U.S. 584, 153 L.Ed.2d 556 (2002) render the Federal Death Penalty Act unconstitutional?

X.     Was LeCroy entitled to an evidentiary hearing on his jury selection claim?

## EXHIBIT "B"

1) Whether the federal carjacking statute, 18 U.S.C. §2119, which prohibits the taking of a motor vehicle by violence or intimidation from the person or presence of another with the intent to kill or harm, is violated when there is a separation between the violence inflicted upon the victim and the subsequent taking of that victim's vehicle?

2) Assuming that the carjacking statute allows prosecutions even when there is a separation between the violence used by the perpetrator and the later taking of the victim's vehicle, did the lower Court err when refusing Petitioner's request for a jury instruction about the lesser crime of carjacking in which a death did not "result?"

## EXHIBIT "C"

**A.   MR. LECROY'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED BY HIS TRIAL COUNSEL'S FAILURE ADEQUATELY TO INVESTIGATE AND/OR PRESENT A MENTAL HEALTH CASE AT SENTENCING. HAD THIS EVIDENCE BEEN PRESENTED THERE IS A REASONABLE PROBABILITY THAT THERE WOULD HAVE BEEN A DIFFERENT RESULT AS TO SENTENCE**

11.   Prior to the offenses alleged in the indictment Mr. LeCroy had a documented history of mental illness, in part triggered by childhood abuse by a female babysitter as well as sexual abuse in prison.

12.   Counsel obtained documentary evidence regarding this mental health history and obtained expert opinions regarding this mental health condition. This evidence would have offered an explanation for the attack on Ms. Tiesler for which the Defendant was convicted and would have been powerful mitigation evidence at sentencing. However, counsel erroneously and unreasonably failed to investigate and present this evidence, in part because counsel conducted an insufficient investigation and had failed to identify the female babysitter who had abused the Defendant as a child, in part because counsel unreasonably feared an evaluation of the Defendant by a government expert without pursuing procedures under Rule 12.2 of the Federal Rules of Procedure by which they would have known the specific risks, if any, they faced, in part because counsel unreasonably feared government rebuttal evidence without knowledge of what that rebuttal evidence

would have been, and in part because counsel unreasonably chose to pursue a "jurisdictional" defense, despite the government's evidence connecting the carjacking with the death of Ms. Tiesler. See, United States v. LeCroy, 441 F.3d at 924-925.

13.    In instructing the Defendant not to submit to a government mental health examination, pursuant to the procedure of Rule 12.2 of the Federal Rules of Procedure, defense counsel necessarily foreclosed an opportunity to present defense evidence on mental health issues without knowledge of the nature of the rebuttal evidence that would have been derived from a government examination. They prevented any effective use of mental health evidence when they instructed the Defendant to refuse to submit to an examination by a government expert. They made this decision even though they did not know what mental health evidence, if any, would be available to rebut its mental health case, and despite the fact that under Rule 12.2(c)(2), the Government would be required to disclose its mental health expert's opinion before the defense would be required to disclose its expert's opinion. As a consequence, the defense made a decision to forego mental health evidence without knowledge of the consequences of this decision or alternatives facing the defense.

14.    Had the defense conducted an adequate investigation to identify the babysitter, had the defense not unreasonably chosen not to offer a compelling

mental health mitigation case without knowledge of the full consequences of this decision and had the defense presented the mental health evidence available to it, there is a reasonable probability that the jury would have returned a different sentencing verdict.

**B. MR. LECROY'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED AT SENTENCING WHEN HIS TRIAL COUNSEL FAILED TO PROFFER THE TESTIMONY OF MENTAL HEALTH EXPERT WITNESSES REGARDING THEIR DIAGNOSES OF THE DEFENDANT AND THE TESTIMONY OF A "TEACHING EXPERT" SO THAT THE COURT COULD DETERMINE WHETHER THESE EXPERTS COULD TESTIFY WITHOUT EXPOSING THE DEFENDANT TO AN EVALUATION BY A GOVERNMENT EXPERT OR IRRELEVANT REBUTTAL EVIDENCE AND AS A CONSEQUENCE FAILED TO CALL THESE WITNESSES TO OFFER A MENTAL HEALTH EXPLANATION FOR THE ATTACK ON MS. TIESLER FOR WHICH THE DEFENDANT WAS CONVICTED AND SENTENCED TO DEATH. HAD THESE WITNESSES TESTIFIED AT SENTENCING THERE IS A REASONABLE PROBABILITY THAT THE JURY WOULD NOT HAVE RETURNED A DEATH VERDICT**

15.    The defense consulted with Dr. David Lisak, Ph.D, a nationally known psychologist specializing in the effects on adults of sexual abuse as a child, to testify as a "teaching expert". Dr. Lisak could have provided the jury with insight as to how the well documented sexual abuse of the Defendant as a child and as an inmate had an impact on the Defendant and his life and could have offered an explanation, but not an excuse, as to the how the Defendant could have come to attack Ms. Tiesler, for which he was convicted and sentenced to death. The

testimony of Dr. Lisak would have been compelling evidence in mitigation diminishing the Defendant's moral culpability for the crime for which he had been convicted.

16.    The defense presented "fact" evidence during the sentencing from two doctors who had treated Mr. LeCroy for psychological issues related to childhood abuse while he was incarcerated in the 1990's. However, a question remained as to whether these witnesses could testify as to their opinions diagnosing Mr. LeCroy or whether the "teaching expert", Dr. Lisak, could testify if the Defendant did not cooperate with a government psychiatric evaluation of the Defendant for the purposes of rebuttal evidence, or even if a government psychiatric evaluation was not ordered as to the scope of government expert testimony in rebuttal. A magistrate judge had ordered such an evaluation, but, due to the instruction of counsel, the Defendant had refused to cooperate with the evaluation, invoking his Fifth and Sixth Amendment rights.

17.    At the sentencing hearing the defense called the doctors who had examined the Defendant in the 1990's and they provided "fact" testimony regarding their involvement with Mr. LeCroy, but the Court refused to permit these doctors to testify regarding their diagnoses of Mr. LeCroy. The Court made the same ruling with regard to the testimony of Dr. Lisak and Ms. Vogelsang, a licensed clinical social worker with expertise in mental health issues who had

conducted a substantial mitigation investigation of the Defendant's background. As a consequence, Ms. Vogelsang was allowed to testify only as a "fact" witness.

18.    Counsel unreasonably failed to present the testimony from the doctors as to their diagnoses, nor did it present the testimony of Dr. Lisak or Ms. Vogelsang, for fear of the testimony that the Court would allow in rebuttal or that the Court would require an evaluation of the Defendant by a government expert. This decision by the defense was unreasonable, because it was made without knowledge of the options available to the defense.

19.    Had the defense proffered the testimony of the doctors who had treated the Defendant in the 1990's, as well as Dr. Lisak and Ms. Vogelsang, as had been suggested by the Court in a pre-trial proceeding (February 3, 2004 Transcript, p. 23), the defense would have been able to make an intelligent choice knowing the extent to which, if any, the Court would have allowed rebuttal evidence or required an independent evaluation of the Defendant.

20.    Due to the failure to proffer the proposed testimony, the defense made an uninformed critical strategic decision in the case, which denied the Defendant persuasive mental health evidence offering an explanation, although not an excuse or justification, for the attack upon Ms. Tiesler, for which the Defendant had been convicted. Indeed, counsel for the Defendant never received or insisted upon a

definitive ruling by the District Court of this issue and made critical strategic decisions in the absence of a ruling by the District Court.

21.    Had this evidence been presented there is a reasonable probability that the jury would have returned a different verdict as to sentence or if this issue had been properly perfected it would have been a viable issue on appeal. The jury would have learned of the consequences of childhood abuse and how in particular these effects played a critical part in the attack on Ms. Tiesler.

**C.    THE DEFENDANT'S FIFTH AND SIXTH AMENDMENT RIGHTS TO DUE PROCESS AND THE EFFECTIVE ASSISTANCE OF COUNSEL WERE DENIED WHEN THE GOVERNMENT BREACHED A COURT ORDERED "FIREWALL" ORDER PROHIBITING TRIAL COUNSEL FOR THE GOVERNMENT ACCESS TO INFORMATION RELATED TO THE MENTAL HEALTH EVALUATIONS OF THE DEFENDANT TO THE SUBSTANTIAL DETRIMENT OF DEFENDANT**

22.    In its investigation of Defendant's background, the defense learned that the Defendant had a history of mental health issues related to sexual abuse of Defendant by a babysitter and while in prison. This mental health history was documented in reports of confidential evaluations by mental health professionals while the Defendant was incarcerated.

23.    These circumstances required the appointment of a "firewall" Assistant United States Attorney to represent the Government on issues related to mental health evidence concerning Mr. LeCroy, because under Rule 12.2 of the

Federal Rules of Criminal Procedure the trial prosecutors are not allowed access to mental health information related to a defendant, especially as to sentencing, prior to a guilty verdict and a decision to present expert mental health evidence.

24. Despite the request that a "firewall" counsel be appointed from a United States Attorney's office outside this District, the Court allowed "firewall" counsel to be appointed within the United States Attorney's office of this District. The "firewall" counsel appointed was Assistant United States Attorney Joe Plummer.

25. Pursuant to the "firewall" procedure imposed by the Court, the defense disclosed to Mr. Plummer various information regarding the Defendant's potential mental health defense, including confidential psychiatric records from mental health evaluations while the Defendant was in prison and a report from the Defendant's expert, Dr. David Lisak, Ph.D, with the Department of Psychology with the University of Massachusetts, Boston. Dr. Lisak is a nationally recognized expert on the effects of childhood abuse on adults.

26. Despite the protections intended to be assured the defense by the "firewall" procedures, these procedures broke down in this case when either the name of the Defendant's expert was disclosed to the Government's trial counsel by "firewall" counsel, because disclosure of the name alone revealed the nature of the defense, in that the expert retained by the defense is well known for his expertise in

childhood abuse, or when Mr. Plummer retained an expert in childhood abuse and disclosed this fact to the trial attorneys.

27.    Indeed, after trial it was disclosed by one of the trial counsel in the case, Sally Yates, in remarks at a White Collar Crime Seminar in Atlanta regarding the circumstances when the Government might retain a jury selection expert, that the Government had retained a jury selection expert in this case because trial counsel was anticipating that the defense would claim that Mr. LeCroy was sexually abused as a child and were worried that this issue might resonate with one or more potential jurors.

28.    As a consequence, it appears that the "firewall" procedures broke down in this case to the substantial detriment of the defense. In this situation, the Court should have recused the trial attorneys in this case, as was requested but denied by the District Court, and appointed attorneys outside this District who had not benefited from the penetration of the "firewall" procedures in this case.

29.    Appellate counsel was ineffective in failing to raise this issue on appeal.

30.    Based upon these circumstances, the Defendant's constitutional rights, including his rights to effective assistance of counsel because his trial counsel were handicapped to the substantial prejudice of the Defendant by the Government's violation of the "firewall" procedures, and his rights under Rule 12.2 of the Federal

Rules of Criminal Procedure were violated and the Defendant's conviction and/or sentence should be vacated.

**D.    THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING WHEN COUNSEL FAILED TO CONDUCT AN ADEQUATE AND COMPREHENSIVE MITIGATION INVESTIGATION, PRESENTED "CHARACTER" EVIDENCE FROM WITNESSES WHO HAD NOT BEEN PROPERLY PREPARED BY THE DEFENSE, AND FAILED TO PRESENT COMPELLING MITIGATING EVIDENCE WHICH WAS AVAILABLE**

31.    The mitigation case at sentencing presented by the defense consisted of "character" type witnesses from individuals who knew the Defendant, primarily in prison, "fact" evidence regarding problems in the Defendant's childhood, "fact" evidence regarding the Defendant's encounters with prison mental health personnel and a request for mercy from the Defendant's mother.

32.    Many of the "character" witnesses were substantially impeached when confronted with the facts of the Defendant's previous convictions and current conviction. These witnesses had apparently not been properly prepared for this cross-examination and were presented as witnesses without counsel knowing the full consequences of their testimony based upon this likely cross examination.

33.    The evidence regarding the Defendant's childhood was minimized by limitations imposed by the Court which prohibited the clinical social worker, Jan Vogelsang, from explaining the consequences of problems she had identified in the

Defendant's childhood and how these issues would offer an insight into how the Defendant could have come to commit the crime for which he was convicted. Moreover, Ms. Vogelsang's investigation did not include any information about the Defendant after 1991, when the Defendant first was incarcerated.

34.    This left the defense case for life with nothing more than impeached character evidence, "fact" evidence regarding encounters with prison mental health personnel and the Defendant's "troubled" background, and the simple request for mercy from the Defendant's mother.

35.    Had a more thorough investigation been conducted by counsel for the Defendant, or had counsel not unreasonably closed down the Rule 12.2 procedures as discussed in Grounds A and B above, counsel would have discovered additional compelling mitigating evidence which would have made a significant difference in the jury's consideration of sentence or could have presented compelling expert mitigation evidence offering an explanation for the Defendant's crime, which if presented would have created a reasonable probability of a different result as to sentence.

**E.    THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL**

**COUNSEL FAILED TO OBJECT TO THE COURT'S INSTRUCTION REGARDING THE DEFENDANT'S CLAIMED FUTURE DANGEROUSNESS BECAUSE OF THE "RISK" OF ESCAPE**

36.     On appeal, counsel for the Defendant claimed that the Defendant's death sentence should be set aside because the trial court instructed the jury that they could consider whether Mr. LeCroy was a potential danger to the general public if they found that he was an escape "risk."

37.     The defense contended on appeal that it was improper to condition the jury's consideration of the future dangerousness to the public on a mere "risk" of escape, instead of a "likelihood" of escape.

38.     The Court of Appeals for the Eleventh Circuit, however, failed to consider this claim on any standard other than a plain error standard because the defense had failed to object to the Court's final instruction regarding this issue at trial. United States v. LeCroy, 441 F.3d at 930-931.

39.     There was no reason for the defense not timely raising an objection to the instruction by the Court and had such an objection been raised there is a reasonable probability that the decision of the Eleventh Circuit would have been different on this issue and a new sentencing ordered because the erroneous instruction given was not harmless error.

F.    **MR. LECROY WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO PRESENT "JUROR ELIGIBLE" STATISTICS REGARDING**

**THE HISPANIC POPULATION IN THE NORTHERN DISTRICT OF GEORGIA AND GAINESVILLE DIVISION IN SUPPORT OF HIS CHALLENGE TO THE METHOD OF SELECTING JURORS IN THE NORTHERN DISTRICT OF GEORGIA AND THE GAINESVILLE DIVISION**

40.    The defense filed a jury challenge to the method of selecting jurors in the Gainesville Division and the Northern District of Georgia as a whole based upon the underrepresentation of the Hispanic or Latino population on the qualified wheel for the Northern District of Georgia from which the grand jury which returned the Indictment in this case was selected and from the qualified wheel in the Gainesville Division from which the petit jury was selected in this case.

41.    Unfortunately, counsel unreasonably compared the representation of the Hispanic or Latino community in the Northern District of Georgia and the Gainesville Division with the age-eligible Hispanic or Latino populations of the Northern District and the Gainesville Division without adjusting this figure for United States citizenship, a requirement for jury eligibility. 28 U.S.C. §1865(b)(1). As a consequence, the Defendant did not present an adequate case for relief and his challenge was overruled by the District Court, without even a hearing, and the Eleventh Circuit refused even to consider this issue on appeal. United States v. LeCroy, 441 F.3d at 918, fn. 1.

42.    Had counsel for the Defendant presented figures adjusted for citizenship he would have been able to show a substantial underrepresentation of

the Hispanic or Latino population, upon which a meritorious jury challenge could have been presented. Counsel would have been able to show that between 2.23% to 2.19%[1] of the Hispanic or Latino population of the Northern District of Georgia, are 18 years old or older and United States citizens, based upon 2000 Census figures, while only 1.01% of the qualified wheel for the District at large was Hispanic or Latino, resulting in a comparative disparity of between -54.62% to 53.82%. More than half of the Hispanic or Latino community failed to be represented on the District qualified wheel. Counsel would have also been able to show that the Hispanic or Latino population of the Gainesville Division, who are 18 years or older and citizens, was between 1.89% and 1.68%, based upon 2000 Census figures, while only 0.062% of the qualified wheel in the Gainesville Division was Hispanic or Latino, resulting in a comparative disparity of between minus 67.37% to minus 63.32%. These figures show that approximately two thirds of the Hispanic or Latino community failed to be represented on the qualified wheel for the Gainesville Division.

---

[1]Because of the small number of persons in some racial or ethnic categories in some counties, the Census Bureau does not report the counts of citizens for some groups. For instance, there are 32 African-American persons in Dawson County, but because that number is so small, the Census Bureau does not categorize those persons as either citizens or non-citizens. The range shown for the citizen population in each racial and ethnic group reflects the possible range for citizens had the Census Bureau reported the counts of citizens for all racial and ethnic groups in all counties.

43. The defense would have been able further to show that these disparities were the result of the systematic factor of relying solely upon voter registration lists as the source for jurors in the Northern District of Georgia, as well as other systematic factors, such as the failure to pursue adequate follow up procedures for Hispanic or Latino potential jurors who fail to respond to requests for these jurors to fill in and return qualification questionnaires.

44. Had counsel for the Defendant presented the correct figures for comparison purposes with respect to the Hispanic or Latino community, the defense would have been able to present a meritorious challenge to the jury selection procedures in the Northern District of Georgia and the Gainesville Division, both under the Sixth Amendment of the United States Constitution and the Jury Selection and Service Act of 1968. 28 U.S.C. § 1861 et. seq. Had these figures been properly presented below the Defendant would have had the opportunity to present a meritorious jury challenge in the District Court and the District Court's failure to order such a hearing would have resulted in the reversal of both his conviction and his sentence, or at a minimum a remand of the case for the evidentiary hearing to which he was entitled.

**G.    THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL WHEN COUNSEL FAILED FAIRLY TO PRESENT ADEQUATELY THE ISSUE REGARDING THE RETENTION OF DOCUMENTS FOUND IN DEFENDANT'S CAR PURSUANT TO A LAW ENFORCEMENT SEARCH**

45.    Documents obtained from a law enforcement search of Defendant's car in 1991 were offered by the Government in its case in chief to show Defendant had a history of being a predator, as well as a history of planning to kill or exact revenge against those who crossed him or caused him harm. The documents also supported the Government's claim that Defendant had a history of planning escape. These documents were offered as evidence concerning absence of mistake, modus operandi and identity. E.g., United States v. LeCroy, 441 F.3d at 925-926.

46.    The District Court and the Court of Appeals found that the initial search of the vehicle were permissible as a search incident to the arrest, under New York v. Belton, 453 U.S. 454, 460 (1981). However, the Eleventh Circuit did not address the issue of whether the Defendant's Fourth Amendment rights were violated when the police retained these documents after the conclusion of the Defendant's state prosecution for burglary. The Eleventh Circuit declined to address this argument because it was not fairly presented on appeal, since it was included only in one paragraph of the Defendant's Reply Brief. United States v. LeCroy, 441 F.3d at 925, fn. 8.

47.     Had counsel for the Defendant properly perfected this issue on appeal, there is a reasonable probability that the Eleventh Circuit would have found that the retention of these documents after the completion of the burglary prosecution violated the Defendant's Fourth Amendment rights and that the documents should not have been admitted at the Defendant's trial.

48.     As a consequence, there is a reasonable probability that the decision of the Eleventh Circuit would have been different and that the Defendant's conviction and/or sentence would have been reversed.

**H.      THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING WHEN HIS TRIAL COUNSEL FAILED TO REQUEST AN INSTRUCTION REQUIRING THE JURY TO FIND BEYOND A REASONABLE DOUBT THAT THE DEFENDANT SHOULD BE SENTENCED TO DEATH ONLY IF EACH JUROR FOUND BEYOND A REASONABLE DOUBT THAT ALL AGGRAVATING FACTORS, BOTH STATUTORY AND NON-STATUTORY, OUTWEIGHED THE MITIGATING FACTORS PRESENTED BY THE DEFENSE.**

49.     Under the Federal Death Penalty Act, 18 U.S.C. §3591 et. seq. (the "FDPA"), the sentencing jury must make four distinct findings before sentencing a defendant to death: (1) It must consider and find unanimously that the Government has proved beyond a reasonable doubt one of the four intent factors set out in § 3591(a)(2), § 3593(e)(1); (2) It must consider and find unanimously that the Government has proved beyond a reasonable doubt at least one of the statutory aggravating factors set out in § 3592(c), § 3593(e)(2); (3) It must consider and find

whether the Government has proved beyond a reasonable doubt any other non-statutory aggravating factors for which notice has been given under §3593(a), and each individual juror must consider and find whether the defendant has proved any mitigating factors by a preponderance of the evidence, § 3593(c); and (4) It must consider and find unanimously whether the aggravators so found "sufficiently outweigh" any mitigators so found "to justify a sentence of death." §3593(e).

50.   If, as with the FDPA, the statutory framework for imposition of a death sentence conditions the jury's power to recommend a death sentence on a prerequisite finding that aggravation outweighs mitigation, that finding operates to increase the potential maximum sentence, regardless of whether one labels that determination a "finding of fact" or a "normative judgment." §3593(e) of the FDPA makes the jury's determination that aggravating factors outweigh mitigating factors essential to imposing a death sentence under FDPA. This leads to the conclusion the Sixth Amendment requires that this finding be made by the jury "beyond a reasonable doubt" before a death sentence is legally available, under the authority of <u>Ring v. Arizona,</u>  536 US. 584 (2002) and <u>Apprendi v. New Jersey,</u> 530 U.S. 466 (2000).

51. The Defendant does not contend that Congress specifically provided for a burden of proof of beyond a reasonable doubt at the weighing stage. Instead, we contend that since Congress created a requirement of weighing before a death

sentence can be imposed, the Sixth Amendment requires that this final finding necessary for a death notice can only be made based upon proof beyond a reasonable doubt. The failure of the Court to so instruct the jury, therefore, violated his Sixth Amendment rights.

52.    Counsel for the Defendant did not raise this issue in connection with the sentencing hearing nor on appeal. As a consequence, the Defendant was denied a sentencing determination consistent with his Sixth Amendment rights and his sentence would have been reversed on appeal. Accordingly, there is a reasonable probability of a different result as to sentence had counsel perfected this issue.

I.    **THE DEFENDANT'S DEATH SENTENCE SHOULD BE SET ASIDE BECAUSE THE FEDERAL DEATH PENALTY ACT, 18 U.S.C. §3591, ET. SEQ. (THE "FDPA") IS UNCONSTITUTIONAL UNDER THE FIFTH, SIXTH AND EIGHTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, BOTH ON ITS FACE AND AS APPLIED TO THIS CASE, BECAUSE IT DOES NOT REQUIRE THAT THE AGGRAVATING FACTORS REQUIRED FOR THE IMPOSITION OF THE DEATH PENALTY BE ALLEGED IN THE INDICTMENT**

53.    The issue of whether the FDPA is constitutional because it does not require the allegation in the indictment of the aggravating factors necessary for imposition of the death penalty was raised by the Defendant in the District Court and on appeal and resolved against the Defendant. E.g., United States v. LeCroy, 441 F.3d at 920-921. The United States Supreme Court, however, has never specifically addressed this issue and the Defendant includes this allegation in this

Motion to preserve the issue, which goes to the very constitutionality of the statute under which he was sentenced to death, should the Supreme Court ultimately take this issue on appeal by a petition for writ of certiorari and reach a conclusion contrary to that of the District Court and the Eleventh Circuit.

> **J.  THE FDPA IS UNCONSTITUTIONAL, BOTH ON ITS FACE AND AS APPLIED IN THIS CASE, DUE TO THE FAILURE OF THE FDPA TO REQUIRE THAT NON-STATUTORY AGGRAVATING FACTORS BE ALLEGED IN THE INDICTMENT, OR EVEN IF THE FDPA IS CONSTITUTIONAL ON ITS FACE, BECAUSE OF THE FAILURE TO ALLEGE NON-STATUTORY AGGRAVATING FACTORS IN THE INDICTMENT IN THIS CASE.**

54.    The Indictment in this case did not allege the non-statutory aggravating factors upon which the Government relied in urging that the jury impose a death sentence.

55.    The constitutionality of the FDPA because of its failure to require the allegation in the Indictment of non-statutory aggravating factors, both on its face or as applied to this case, or whether the Fifth, Sixth and Eighth Amendments require the allegation of non-statutory aggravating circumstances upon which a death penalty may be based, even if the FDPA is constitutional on its face, were also raised by the Defendant at trial and on appeal. See, e.g., United States v. LeCroy, 441 F.3d at 922-923. Both the District Court and the Court of Appeals rejected this claim. However, as with the previous claim, the United States Supreme Court has never specifically taken this issue, which goes to the very constitutionality of the

statute and the death sentence in this case, and the Defendant raises this issue in order to preserve it should the Supreme Court later take this issue and decide it differently than the District Court and the Court of Appeals.

**K.    THE DEFENDANT'S PROTECTIONS AGAINST CRUEL AND UNUSUAL PUNISHMENT WOULD BE VIOLATED SHOULD HE BE EXECUTED PURSUANT TO CURRENT BUREAU OF PRISONS AND DEPARTMENT OF JUSTICE PROTOCOLS**

56.    The Defendant recognizes that in a 97 page splintered decision— seven separate opinions—the United States Supreme Court has recently approved from a constitutional attack the lethal injection procedures of Kentucky based upon the record considered by the Court in that case. Baze v. Rees, No.  07-5439, decided April 16, 2008.

57.    However, a majority of the Court left open the question of whether on a different record the procedures of other jurisdictions, such as that of the United States, would result in a different conclusion.

58.    The Defendant believes that the current procedures and protocols of the United States to execute citizens sentenced to death violate the Eighth Amendment protections against cruel and unusual punishment and requests the opportunity to make the required evidentiary showing.

59.    The Defendant believes that given the opportunity to present relevant evidence, a hearing on which he was denied by the District Court, he can show that the lethal injection procedures and protocols which the United States intends to

follow in putting the Defendant to death are cruel and unusual in violation of the Eighth Amendment, in part because they pose a "substantial risk" of serious pain and suffering, thereby prohibiting the Government from killing the Defendant using these means.

> **L.    DEFENDANT'S TRIAL COUNSEL PROVIDED HIM INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL AT HIS SENTENCING HEARING BECAUSE OF THE FAILURE OF COUNSEL TO MAKE AN EFFECTIVE CLOSING ARGUMENT BASED ON THE MITIGATION EVIDENCE THAT WAS ACTUALLY PRESENTED**

60.    Although, as alleged above, trial counsel was ineffective in marshaling an effective mitigation case, especially considering the absence of mental health evidence that could have been available to explain the crimes for which the Defendant was convicted, trial counsel did not organize or present the mitigation evidence that was received in an effective argument for a sentence other than death.

61.    Had counsel made an effective closing argument there is a reasonable probability that there would have been a different result as to sentence.

**M.    DEFENDANT WAS DENIED DUE PROCESS WHEN THE PROSECUTION FAILED TO DISCLOSE TO THE DEFENSE EXCULPATORY INFORMATION OR EVIDENCE BOTH AS TO GUILT/INNOCENCE AND AS TO SENTENCE. HAD THIS INFORMATION BEEN DISCLOSED THERE IS A REASONABLE PROBABILITY THAT THERE WOULD HAVE BEEN A DIFFERENT RESULT EITHER AS TO GUILT OR AS TO SENTENCE**

62.    Although the defense does not have access to the prosecution and law enforcement files in this case, it is believed that there was information known to the prosecution or known to law enforcement agents involved in the prosecution and experts retained by the prosecution which was material either as to guilt/innocence or as to sentence which if it had been disclosed and presented to the jury would have created a reasonable probability of a different result.

**N.    DEFENDANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS, A FAIR AND IMPARTIAL JURY, THE EFFECTIVE ASSISTANCE OF COUNSEL AND TO BE FREE OF CRUEL AND UNUSUAL PUNISHMENT WERE VIOLATED WHEN THE GOVERNMENT RETAINED A JURY SELECTION EXPERT TO ASSIST THE GOVERNMENT IN ITS SELECTION OF THE JURY WITHOUT DISCLOSING THIS FACT TO THE DEFENSE**

63.    The defense learned only after trial that the Government had hired a jury selection expert to assist it in the selection of the jury.

64.    This jury selection expert was present in the courtroom but the existence of the expert not disclosed to the defense so that the defense could take

precautions that this expert would not have any improper contact with potential jurors, family members, witnesses, and the defense team.

65.    It is believed that this secret jury selection expert had such improper contact to the substantial detriment of the Defendant and in violation of his constitutional rights.

**O.    THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL WHEN HIS APPELLATE COUNSEL DID NOT PROPERLY ALLEGE AND/OR PRESENT VIABLE ISSUES ON APPEAL. HAD COUNSEL BEEN EFFECTIVE THERE IS A REASONABLE PROBABILITY THAT THE DEFENDANT'S CONVICTION AND/OR SENTENCE WOULD HAVE BEEN REVERSED ON APPEAL**

66.    In addition to the specific issues alleged above, appellate counsel for the Defendant did not raise all viable issues on appeal nor did counsel effectively present the issues in accordance with proper appellate procedure the issues that were raised.

67.    Had counsel effectively represented Defendant on appeal, there is a reasonable probability that either the Defendant's conviction and/or sentence would have reversed on appeal.