UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,   )
   )
   v.   )   CASE NO.
   )   2:02-CR-038-RWS-SSC-1
WILLIAM EMMETT LECROY, JR.   )
   )
   Defendant.   )

## DEFENDANT'S RESPONSE TO COURT'S ORDER REGARDING EVIDENTIARY HEARING

On March 13, 2009, the Court entered an Order (Doc. 512) granting in part the Defendant's Motion for Evidentiary Hearing and Discovery (Doc. 510), but requiring the Defendant to provide more specifics regarding his requests to present evidence as to Grounds D and N of his Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. §2255 (the "Motion to Vacate)(Doc. 493).

In his Motion for Evidentiary Hearing and Discovery the Defendant had asked for permission from the Court to present testimony from a number of witnesses to support the claims in Ground D of the Motion to Vacate. Although the Motion for an Evidentiary Hearing and Discovery included a lengthy list of witnesses, it was explained in the Motion that "[w]hile the Defendant may not call all of the above witnesses, he, nevertheless, respectfully requests the right to call them if necessary to support his constitutional and other claims." (p. 3).

Ground D of the Motion to Vacate raises a claim of ineffective assistance of counsel with respect to the adequacy of the mitigation investigation in this case and the failure of trial counsel to present compelling mitigation evidence which would have supported a sentence other than death. While Ground D is listed as a separate ground for relief, the evidence that the Defendant would have presented from lay witnesses, such as those listed in the Motion for Evidentiary Hearing and Discovery, would have also provided a factual basis for a mental health mitigation case, which would have offered the jury an explanation, although not an excuse, for the attack on Ms. Tiesler for which the Defendant was convicted and sentenced to death. In particular, these witnesses would have been able to confirm indications of sexual abuse of the Defendant as a child and as an adolescent, including bizarre sexual activities, and the failure of his parents and other adult relatives to require appropriate boundaries on sexual behavior among the Defendant and his other childhood relatives and friends, both male and female. This would have been confirmatory evidence of childhood sexual abuse, the effect of which on Mr. LeCroy as an adult would have been explained in more detail by expert witnesses who were available to trial counsel. We have pared down the original list of witnesses to the following witnesses who would testify as described below:

1.  **Ms. Jan Vogelsang.** Ms. Vogelsang is already expected to be a witness with regard to Grounds A and B concerning the ineffective assistance of trial counsel with respect to mental health evidence. Ms.

Vogelsang is a licensed social worker who conducted a psycho-social and family history investigation in this case and can express her concerns about the failure of trial counsel to follow certain leads in the family investigation directed at childhood sexual improprieties or to present evidence of such improprieties, as well as the failure of the trial counsel to employ available mental health expertise to support this mitigation case. She can also testify as to her concerns about the directions she received not to include in her investigation any information about the period of over a decade immediately prior to the offense.

2. **William LeCroy, Sr. and Donna Houston.** William LeCroy, Sr. and Donna Houston are the Defendant's parents. They can testify as to the fact that they employed numerous female baby sitters through the years while the boys were young and the inability now to identify each baby sitter because of numerous moves. They can also testify to sexual improprieties and sexual inappropriate behavior in the extended families on both sides of the marriage. They can further testify to problems in their marriage, which ultimately led to divorce, and the devastating effect these circumstances had on the Defendant. William LeCroy, Sr. can also testify that the Defendant told him he was raped in prison.

3

3.    **Denisha LeCroy Strawn.** Denisha LeCroy Strawn is the ex-wife of Bill LeCroy, Sr., the Defendant's father, and can describe inappropriate sexual behavior in the family. She can also testify about kind acts of the Defendant, especially towards her son, his half brother.

4.    **Chad LeCroy.** Chad LeCroy is the Defendant's younger brother. He can testify that he and the Defendant were sexually molested by Russell Kelly, Jr., the Defendant's cousin, including bizarre masturbation rituals. He can also testify to the presence of babysitters in their life growing up and inappropriate sexual behavior in the family.

5.    **Keisha LeCroy.** Keisha LeCroy is the wife of Chad LeCroy and can confirm abusive behavior in the family.

6.    **Linda Cook.** Linda Cook is the Defendant's paternal aunt and can testify to excessive physical abuse in the Defendant's family and the large number of female babysitters the Defendant's parents employed.

7.    **Curtis Cook.** Curtis Cook is Linda Cook's husband. He has positive things to say about the Defendant, including the Defendant's watching out for and caring for his younger brother and half brothers.

8.    **Kristi Grassi.** Kristi Grassi is the Defendant's cousin on his father's side. She is the same age as the Defendant and spent substantial time

4

with the Defendant when they were growing up. She will confirm bizarre sexual activities involving herself and the Defendant and the failure of adults in the family to impose appropriate boundaries and limits on such behavior, including inappropriate behavior between the Defendant and his mother. She also observed excessive physical abuse of the Defendant.

9.     **Julie Cook.** Julie Cook is Kristi Grassi's sister and the cousin of the Defendant. She can confirm the accounts of her sister described above.

10.    **Russell Kelly, Jr.** Russell Kelly, Jr. is the Defendant's paternal cousin who engaged in bizarre sexual activities with the Defendant and other cousins, both male and female. He can confirm that the Defendant reported to him at an early age that he had been sexually molested by a female babysitter.

11.    **Richard Kelly.** Richard Kelly is Russell Kelly's brother and will confirm what is described by his brother above.

12.    **Larry LeCroy.** Larry LeCroy is the Defendant's uncle and can attest to how kind, polite and friendly the Defendant was, yet his father singled him out for physical brutality. He can confirm the Defendant's statements that he had been raped in prison. He observed inappropriate behavior by the Defendant's mother toward the

5

Defendant, treating him more like a boyfriend than a son. He can confirm numerous female babysitters and the brutality of the Defendant's father toward his mother and the Defendant. He can also confirm inappropriate sexual behavior in the family among the Defendant's cousins.

13. **Russell Kelly, Sr.** Russell Kelly, Sr. is the father of the Defendant's cousins. He can testify to the abuse and inappropriate behavior in the LeCroy family.

14. **Charlotte LeCroy Thomas.** Charlotte LeCroy Thomas is the ex-wife of Larry LeCroy and can testify to the physical and emotional abuse and inappropriate behavior in the Defendant's family.

15. **James Thomas LeCroy.** James Thomas LeCroy is the Defendant's paternal cousin who can speak to the abusive behavior in the Defendant's family.

16. **Rita LeCroy Kelly McLeod.** Rita LeCroy Kelly McLeod is the paternal aunt of the Defendant. Ms. McLeod can testify to abusive behavior in the family and sexually inappropriate behavior.

17. **Charlotte LeCroy Thomas.** Ms. Thomas is the ex-wife of Larry LeCroy and paternal aunt of the Defendant. She can testify to inappropriate behavior in the family as well as excessive violence.

6

18.    **Ms. Stephanie Kearns, Mr. Brian Mendelsohn, Mr. Paul Kish, Mr. Dan Summer, Ms. Susan Miller, Mr. Michael Hutchinson.**

These are the trial counsel and defense fact investigators, who will already be called as witnesses with regard to Grounds A and B. In that we are raising the claim of ineffective assistance of counsel, each of them would be questioned as to any possible reasons for not pursuing investigations regarding the witnesses described above or why evidence that was available was not presented at trial.

As previously noted, at an evidentiary hearing the defense may or may not call all of the above witnesses. We are merely asking for the right to do so if necessary. Moreover, our investigation continues and should additional witnesses be identified in support of this claim, we will promptly alert the Court to the names of the witnesses and what the witness would say and ask for permission to present those witnesses.

With regard to Ground F of the Motion to Vacate regarding the undisclosed jury selection expert employed by the Government, the Defendant cannot at this time provide the Court any more specifics other than the fact that defense counsel did not know that prosecution counsel were employing a jury selection expert at the time of trial and did not discover this fact until defense attorney Paul Kish heard trial prosecutor Sally Yates state that such an expert had been used by the prosecution during the trial when she was giving a speech at a continuing legal education seminar after the conclusion of the trial. The defense still does not know

7

who this person (or persons) was and has asked at this time that the Court grant discovery, requiring the Government to identify this expert or (experts) so that a deposition or depositions can be taken regarding his or her activities and what, if any, contacts he or she may have had with potential jurors.

In short, we know that an expert or experts were hired, but we do not know who, and are, therefore, unable to specify further the evidence in support of this claim until we have had an opportunity to determine whether or not any improper contact occurred. We cannot do this until we know the names of any experts. Accordingly, the Defendant requests that the Court simply require the Government to identify the expert or experts and allow the defense to take depositions so that further investigation can occur, at the conclusion of which the defense can make a particularized showing of what, if any, improper activities occurred.

This 27th day of March, 2009.

Respectfully submitted,

s/John R. Martin

44 Broad Street, N.W.                    John R. Martin
Suite 202 The Grant Building            Georgia Bar No. 473325
Atlanta, Georgia  30303
404.522.0400
jack@martinbroslaw.com

s/Sandra Michaels

44 Broad Street, N.W.                    Sandra Michaels
Suite 202 The Grant Building            Georgia Bar No. 504014
Atlanta, Georgia  30303
404.522.0400
slmichaels@mindspring.com

8

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2009, I electronically filed the foregoing **RESPONSE TO COURT'S ORDER REGARDING EVIDENTIARY HEARING** with the Clerk of Court using the CM/ECF system which will send notification of such filing to William McKinnon, Assistant United States Attorney.

s/John R. Martin
JOHN R. MARTIN