IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

GAINESVILLE DIVISION

UNITED STATES OF AMERICA          :
                                  :          CRIMINAL ACTION
                                  :          NO. 2:02-CR-038-RWS
          v.                      :
                                  :
                                  :
WILLIAM EMMETT LECROY, JR.        :

**GOVERNMENT'S RESPONSE TO DEFENDANT'S PROFFER
OF MITIGATION WITNESS TESTIMONY**

Comes now the United States of America, by and through counsel, Sally Quillian Yates, United States Attorney, and William L. McKinnon, Jr., Assistant United States Attorney, for the Northern District of Georgia, and submits its response to defendant's Proffer of Mitigation Witness Testimony. (Doc. 527). The government respectfully submits that the Court should deny defendant the opportunity to call the witnesses whose testimony is proffered because such testimony would be cumulative of testimony presented during the sentencing phase of the trial and such additional mitigation testimony would not have affected the outcome of the sentencing hearing.

In the defendant's Traverse to the government's response to his Section 2255 Motion, defendant contends that trial counsel should have presented additional mitigating witnesses "who could

have testified about bizarre sexual activities that were allowed or occurred involving Defendant as a child, . . ." (Doc. 511-13).  In its order granting an evidentiary hearing, the Court provided that the defendant would be allowed to proffer what evidence the defendant would present on this issue before ruling on whether defendant would be allowed to present such evidence through witness testimony.  (March 12, 2009 Order, p. 2).

At the conclusion of the evidentiary hearing, the Court granted the defendant the opportunity to present the proffer in writing.  (Transcript, p. 725).  The Court advised the Government that it could respond, if it wished.  (Id.).  The Government initially did not file a response, but does so now.

In the Court's March 12, 2009, order, the Court specifically limited the proffer to "mitigation witnesses 'who could have testified about bizarre sexual activities that were allowed or occurred involving Defendant as a child.' (Traverse [511] at 13.)" As to the specific issue that the Court allowed the defendant to make a proffer,[1] the defendant proffers the following:  that Julie Cook, the defendant's cousin, would testify that when she was five years old and the defendant was ten, the defendant laid on top of her and simulated sexual intercourse; Kristie Cook Grasis, also a

---

[1]The defendant's proffer goes well beyond the limited subject matter about which the Court allowed the defendant to submit a proffer.  The government will not address the facts contained in the proffer that go beyond the Court's order unless directed to do so by the Court.

cousin, would testify that the defendant engaged in inappropriate sexual behavior with her in a car on a family vacation; Chad LeCroy, the defendant's brother, and Richard Kelly, the defendant's cousin, would testify to inappropriate sexual behavior that they, the defendant, and Kristie and Julie Cook and Russell Kelly engaged in as children, but the proffer gives no details of what activity is referenced or when or where it occurred; Larry LeCroy, the defendant's uncle, would testify that the LeCroy boys and their cousins were observed engaging in inappropriate sexual conduct as children and were punished for it, however, the proffer gives no details of what activity is referenced or when or where it occurred; Linda Cook, the defendant's aunt, would testify that the LeCroy boys and their cousins were observed engaging in inappropriate sexual conduct as children and were punished for it, but again the proffer gives no details of what activity is referenced or when or where it occurred.  (Doc. 527).

This testimony about inappropriate sexual activity between defendant and his cousins is cumulative of the trial testimony given by defendant's mitigation expert, Jan Vogelsang.  At trial Ms. Vogelsang testified that she interviewed the defendant's cousin Russell Kelly, Jr., on two occasions, uncle Larry LeCroy, cousin Richard Kelley, aunt Rita LeCroy, brother Chad LeCroy, cousin, Kristie Grasis twice, aunt Linda Curtis, and uncle Russell Kelley, Sr.  (Doc. 436-2519-20).  Ms. Vogelsang displayed to the jury a

3

chart of a family tree in which she specifically identified by color any family member who had been either the victim or perpetrator of inappropriate sexual behavior.  (Doc. 436-2522). Ms. Vogelsang testified about the inappropriate sexual behavior among the defendant and his family members as follows:

> Q.   You mentioned a sexualized environment. What do you mean by that?
> A.   This was an environment in the extended family, and I mentioned early that these family members got together, the kids stayed at the grandmother's a lot, she kept the children a lot, where, again, adult supervision was absent.  And so beyond the years when children normally explore sexually, when children normally are curious, these cousins continued  to have sex with each other, to engage in sexual behaviors that sometimes were almost right in front of their parents with nothing being said, incidences where they would explore and fondle each other and experiment in the back seat of the car with their parents driving the car in the front seat and nothing being said about it; and within another environment where the message to the male children was that this was the only thing women were good for was for sex and that if it weren't for sex, women would have a bounty on their heads.
> Q.   Where is this message coming from?
> A.   This is coming from the uncles, Bill, Sr., and Uncle Larry; and also with the boys, much laughing and joking and teaching about mutual masturbation and how this is something boys have to learn how to do; but in this atmosphere otherwise, where there's just a lack of supervision and the boys and the girls are just messing around with each other well into their adolescence, older adolescence.

(Doc. 436-2531-32).

As evidenced above, Ms. Vogelsang gave summary testimony of her interviews with the same family members whom the defendant now wishes to call in this post-conviction proceeding.  Her summary testimony described the inappropriate sexual behavior that occurred

between the defendant and his cousins.   Therefore, the proffer now provided by the defendant is merely cumulative of evidence that the jury heard during the sentencing phase of the trial.

As the government pointed out in its response to the defendant's Section 2255 motion, the defendant bears a heavy burden of establishing that additional mitigating evidence would have affected the outcome of the sentencing hearing in a death penalty trial.   Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).   In Chandler, the Court stated that

> In reviewing counsel's performance, a court must avoid using "the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 104 S.Ct. at 2065. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." FN20 *Id.;* see *Waters*, 46 F.3d at 1514 (en banc) ("The widespread use of the tactic of attacking trial counsel by showing what 'might have been' proves that nothing is clearer than hindsight-except perhaps the rule that we will not judge trial counsel's performance through hindsight.").

218 F.3d at 1316-17.

> The Court gave the following example of what it meant:

> For example, "[i]t is common practice for petitioners attacking their death sentences to submit affidavits from witnesses who say they could have supplied additional mitigating [ ] evidence, had they been called or ... had they been asked the right questions." *Waters*, 46 F.3d at 1514 (*en banc*). But "[t]he mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." *Id.* (noting that such witnesses show nothing more than that, "with the luxury of time and the opportunity to focus resources on specific parts of a made record,

5

> post-conviction counsel will inevitably identify shortcomings"). And, basing the inquiry on whether an investigation (if one had been undertaken) would have uncovered mitigating evidence (or witnesses) is an example of judging counsel's acts from the benefit of hindsight. The proper inquiry was articulated in *Rogers v. Zant*: "Once we conclude that declining to investigate further was a reasonable act, we do not look to see what a further investigation would have produced." 13 F.3d 384, 388 (11th Cir.1994).

218 F.3d at 1317 n.20.

Accordingly, before the jury returned its death penalty, the jury heard and considered testimony that the defendant engaged in inappropriate sexual behavior with these family members. Despite hearing this mitigating evidence, the jury nevertheless determined that it would sentence defendant to death. Accordingly, the defendant cannot demonstrate that the live testimony of these witnesses would have caused the jury to impose a different sentence. Based upon the proffer, the Court can determine that the defendant cannot satisfy the prejudice prong of the <u>Strickland</u> with respect to this evidence.

Therefore, the Court need not hear the live testimony of these additional mitigating witnesses, because it is merely cumulative of mitigating evidence that the jury heard at trial.

The defendant suggests in his proffer that the live testimony of the proffered witnesses is relevant to this Section 2255 proceeding because it supports Dr. Lisak's opinion testimony that the defendant was sexually molested as a child. (Doc. 527-1-2). However, as noted above, evidence that the defendant engaged in

6

inappropriate sexual behavior with family members as a child and teenager is already in the record through the testimony of Ms. Vogelsang. The defendant does not need to present this evidence in the form of live testimony at this stage of the proceeding. To the extent that the defendant wants to argue that the evidence supports Dr. Lisak's testimony, the defendant can do so based on the record as it stands.

Therefore, the Court should issue an order that denies the defendant's request to call these witnesses at the evidentiary hearing and that orders that the evidence in this Section 2255 proceeding is now closed. Once the Court issues that order, the parties should be able to agree on a reasonable briefing schedule, as the Court directed at the conclusion of the evidentiary hearing.

Respectfully submitted this the 1st day of June, 2010.

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

/s/
WILLIAM L. McKINNON, JR.
ASSISTANT U.S. ATTORNEY
Georgia Bar Number 495812

600 U.S. Courthouse
75 Spring St., S.W.
Atlanta, GA  30303
Telephone 404/581-6000
Facsimile 404/581-6181

CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the persons listed below a copy of the foregoing document by electronically filing with the Clerk of Court using the CM/ECF system which will

automatically send notification via email said copy to:

Jack Martin

Sandra Michaels

This 1st day of June, 2010.

/s/
WILLIAM L. MCKINNON, JR.
ASSISTANT UNITED STATES ATTORNEY