IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CASE NO. |
| | ) | 2:02-CR-038-RWS-SSC-1 |
| WILLIAM EMMETT LECROY, JR. | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| WILLIAM EMMETT LECROY, JR. | ) | |
| | ) | CIVIL ACTION NO. |
| Petitioner, | ) | 2:08-CV-2277-RWS |
| | ) | |
| v. | ) | Prisoner Habeas Petition |
| | ) | 28 U.S.C. § 2255 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MOTION AND MEMORANDUM FOR CERTIFICATE OF APPEALABILITY

Petitioner William Emmett LeCroy, Jr. (hereinafter "Petitioner," "Defendant or "LeCroy") hereby moves the Court, pursuant to 28 U.S.C. §2253(c)(1)(B), for a Certificate of Appealability (hereinafter "COA") in order to appeal the final Order of the Court (Doc. 551) denying the Petitioner's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. §2255 (Doc. 493) and the Court's Order (Doc. 554) denying Petitioner's Motion to Alter or Amend the Judgment (Doc. 553).

1

## I.    The Standard for Issuing a COA

28 U.S.C. §2253(c)(2) provides that a COA should issue "only if the applicant has made a substantial showing of the denial of a constitutional right." In Miller-El v. Cockerell, 527 U.S. 322, 338 (2003), the Supreme Court explained that §2253(c)(2) does not "require petitioner to prove before the issuance of a COA, that some jurist would grant the petition for habeas corpus." If this were the standard, a COA would hardly ever be issued and the right of appeal rendered meaningless. Instead, a petitioner satisfies the standard of §2253(c)(2) simply "by demonstrating that a jurist of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. at 327; (citing to Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Moreover, "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Id. at 338. Here the Petitioner's §2255 action raises several issues that are "debatable" or at least "adequate to encouragement to proceed further."

## II.    Issues Justifying a Certificate of Appealability

§2253(c)(3) states that the Court in issuing a COA "shall indicate which specific issue or issues satisfy the showing required by paragraph (2)." Counsel for Petitioner believes that the following issues satisfy the requirements of §2253(c)(2) as interpreted in Miller El v. Cockerell and Slack v. McDaniel.

### A. Ineffective Assistance of Counsel

The dominant issue raised during the §2255 proceedings was Petitioner's claim that his counsel were constitutionally ineffective. A claim of constitutional ineffectiveness of counsel requires a cumulative analysis of the instances of deficient performance. As the Supreme Court held in <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984), the burden is on the Defendant to show "that there is reasonable probability that but for counsel's unprofessional error<u>s</u>, the result of the proceeding would have been different." (Emphasis added).

The following claims of ineffective assistance of counsel, as described on page 75 through 77 in the Court's Order denying relief (Doc. 551), raise issues of ineffectiveness which are at least "debatable" or deserving of "encouragement to proceed further" and therefore merit a COA.

> A. Whether LeCroy's right to the effective assistance of counsel was violated when his trial counsel failed to adequately investigate and/or present a mental health case at sentencing;
>
> B. Whether LeCroy's right to the effective assistance of counsel was violated when his trial counsel failed to proffer his teaching expert's testimony which would have enabled the district court to rule on the scope of the Government's rebuttal evidence and whether the Government was entitled to evaluate LeCroy;
>
> C. Whether LeCroy's right to the effective assistance of counsel was violated when his trial counsel failed to conduct and present an adequate and comprehensive mitigation investigation and presented character witnesses who were not properly prepped;

D. Whether LeCroy's right to the effective assistance of counsel was violated when his trial counsel failed to object to the Court's instruction regarding claimed future dangerousness because of the "risk" of escape;

E. Whether LeCroy's right to the effective assistance of counsel was violated when his trial counsel failed to present juror eligible statistics regarding the Hispanic population in the Gainesville Division;

F. Whether LeCroy's right to the effective assistance of counsel was violated when his trial counsel failed to request an instruction requiring the jury to find beyond a reasonable doubt that LeCroy should be sentenced to death only if each juror found beyond a reasonable doubt that all aggravating factors, both statutory and non-statutory, outweighed the mitigating factors presented by the defense;

G. Whether LeCroy's right to the effective assistance of counsel was violated when his trial counsel failed to make an effective penalty-phase closing argument regarding mitiation evidence actually presented.

Except for issue E, each of the claims of ineffective assistance of counsel are directed at counsel's performance during the sentencing phase of the trial, about which the Court received extensive evidence, including the testimony of the trial attorneys and mental health experts who could have provided a significant mental health evidence in mitigation of sentence, but were not called to testify. The Court concluded that counsel's failure to present a viable mental health case in mitigation, based in part on childhood sexual abuse, as confirmed by Dr. Lisak, and other severe mental illnesses, which in Dr. Hilton's opinion were the catalyst

for the crime which would not have occurred but for these mental illnesses, was nevertheless reasonable.

Among the reasons cited by the Court for counsel's action were (1) fear of a government evaluation, even though a decision was made to forego mental health evidence without ever knowing exactly what that evaluation would be (Doc. 551, p. 137), (2) concerns that the evaluation would reveal gruesome details regarding the crime, although these details were starkly proven in the physical evidence and graphically exploited by the prosecution in closing argument (Doc. 551, pp. 134-135), and (3) fear of the testimony of the government expert, Dr Medlin, even though her evaluation was in the opinion of Dr. Lisak "a 'hatchet job' that he could easily refute," because to a lay jury "a scientifically wrong opinion could be dressed up enough to be believable in their opinion." (Doc. 551, p. 139-140, 143-144).[1]

In addition, the Court found that the decision by counsel to forgo expert mental health evidence and instead argue that childhood sexual abuse played a significant part in explaining the crime was nevertheless reasonable, even though defense counsel conceded that each thought the other would make this argument from the meager evidence that was available and as a consequence all that was said

---

[1]Dr. Lisak described Mr. Medlin's report as "nonsense" and a "hatchet job by somebody who really didn't know what she was talking about." He was "shocked at some of the references she was citing," because they are not "real studies." (Evidentiary Hearing Transcript (hereinafter "EHT", pp. 166-167)).

was that sexual abuse would cause the Defendant to have "low self-esteem," and made no connection of the sexual abuse with the crime itself. (Trial Transcript (hereinafter "TT"), pp. 2715-2716). The Court further excused the failure of counsel to present any meaningful mental health defense in closing argument because "there was nothing in evidence which would explain – besides a common-sense understanding – how the abuse could have affected him because no expert testified." (Doc. 551, pp. 142-143). But this is exactly what made the actions of the counsel unreasonable and deficient in the first place. While from the slender and self-serving evidence offered some of the jurors may have found that LeCroy had suffered childhood sexual abuse, they were never offered any casual link between that abuse and the crime other than counsel's claim it may have caused "low self-esteem," hardly a compelling explanation.  See, Johnson v. United States, ___ F. Supp. 2d ___, 2011 WL 18326282 *182 (N. D. Iowa) ("While trial counsel may have laid a trail of bread crumbs for the jurors to follow concerning Johnson's mental state up to and shortly after the offenses, the trail disappeared at the critical juncture, the time of the offenses, and it was wishful thinking to imagine that the jurors would necessarily make the desired connections without specific guidance.")

Counsel for Petitioner, of course, respect, while disagreeing with, the Court's conclusions. But the question now is whether those conclusions are at least "debatable" or whether Petitioner's claims in the unusual context of this case

deserve "encouragement to proceed further." Among the issues worthy of further consideration by the Eleventh Circuit are the following:

(1) Whether it is reasonable investigation of potential mental health issues to have your client evaluated by a psychiatrist who provides an opinion attributing the defendant's crime to mental illness but then rejecting his opinion without ever even discussing the case with the expert.[2]

(2) Whether it is reasonable for an attorney to forego mental health evidence for fear of a negative government evaluation, without first seeing what that government evaluation is and then determining the risks versus rewards in presenting mental health evidence.[3]   After all, Rule 12.2(c) of the Federal Rules of

---

[2]Dr. Hilton attributed the Defendant's crime to various mental disorders, including "borderline personality disorder" and "schizotypal personality disorder," which often leads to "paranoid schizophrenia" and may include "transient psychotic episodes or near psychotic episodes." If only interviewed by counsel he would have told them that in his expert opinion LeCroy would not have committed the attack on Ms. Tiesler "but for the mental illnesses" he had diagnosed and the murder was "the product of (LeCroy's) mental illnesses." (EHT, pp. 195-198, 205-206, 216-217).

[3]The issue is not whether counsel conducted a mental health investigation. They clearly did. The issue is whether to abandon that evidence and instead launch a doomed effort to finesse the issue through a "teaching expert" was a reasonably informed decision without ever meeting with the psychiatrist who evaluated the Defendant or knowing what a Government evaluation would show. Counsel could have submitted their client to a Government evaluation and if it turned out badly, still attempted the "teaching expert" ploy. The defense would have been no worse off than they turned out to be. The gravamen of the Defendant's ineffective assistance of counsel claim was that the decision to jettison a robust mental health defense was made without knowledge of what the real stakes were, i.e. what the defense experts would say and what a Government evaluation would reveal.

Criminal Procedure grants a capital defendant the right to review a Government evaluation before making a final decision as to presenting expert mental health testimony at sentencing and Rule 12.2 (c) (4) specifically protects a capital defendant from any statement made during the Government evaluation, any testimony of an expert based on any statement, and any "other fruits of the statement" from being admitted into evidence unless the defendant decides to introduce expert evidence at sentencing in a capital case. See, e.g., United States v. O'Reilly, 2010 WL 653188*5 (E.D. Mich.). And in this context the "once burnt, twice shy" excuse, because of a prior bad experience with a Government evaluation, is "simply not good enough" when without even knowing what the Government evaluation would show in this case counsel abandoned mental health evidence and as a consequence effectively doomed any mitigation case connected to the actual crime. Johnson v. United States, at *181.

(3) Whether it is reasonable for counsel to forego a mental health explanation for a gruesome crime and instead rely on "soft" mitigation based solely on a troubled childhood, with vague intimations of sexual abuse, because the presentation of mental health evidence will provide graphic details regarding the crime which are otherwise already present in the evidence. (EHT, pp. 118, 142-280-283). Johnson v. United States, at *182 ("The rationale of preventing jurors from refocusing on the crimes was likewise untenable." Once convicted, "the best avenue of mitigation would be to try to show how Johnson's mental impairments

and mental state <u>at the time of the offenses</u> affected and explained her participation in the killings.") (emphasis added).

(4) Whether it is reasonable performance to attempt to make a mental health case based upon childhood sexual abuse solely through argument of counsel without any evidence to connect childhood abuse with the crime and then for counsel to mistake as to who was to make the argument. As Mr. Mendelsohn testified, "I'm not sure whether she had expected me to do it or I had expected her to do it, but somehow it didn't happen." (EHT, p. 170).

As to the issue of prejudice, counsel has addressed this issue in detail in prior briefs. (Doc. 542, pp. 26-30; Doc. 545, pp. 19-22). Petitioner does not simply rely upon Justice O'Connor's observation in <u>California v. Brown</u>, 479 U.S. 538, 545 (1987), but instead on numerous cases in the Eleventh Circuit and other circuits emphasizing the mitigating power of evidence connecting often horrible crimes with mental illness. (Doc. 542, pp. 29-30; Doc. 545, pp. 20-22). Nor can it safely be said that this case was unwinnable on the issue of sentence, no matter what causal relationship could be shown between the crime and mental illness. (Doc. 551, p. 176). After all, in the case cited by the Court, <u>Lawhorn v. Allen</u>, 519 Fd 1271, 1296 (11th Cir. 2008), the Eleventh Circuit nevertheless found sufficient prejudice from an inadequate closing argument to order relief despite "the shocking evidence of the crime," and <u>Clisby v. State  of Alabama</u>, 26 F.3d 1054, 1057 (11th Cir. 1994), cited in <u>Lawhorn</u>, involved a vicious murder by a defendant

who had killed before (Id. at 1035), the single most aggravating factor in a death case. Suffice it to say, the issue of prejudice, which often depends upon the eye of the beholder, is at least debatable and worthy of consideration on appeal. See, also, Johnson v. United Sates, at *3, 188, where the court granted sentencing relief due to the failure to present mental health evidence connected to the crime, as here, in a case involving the brutal murders of five individuals, including two children 10 and 6 years old.

Counsel for Petitioner cannot cite to the Court any case which deals with this unusual composite of circumstances of this case, nor has the Government cited to the Court any such case. Nevertheless, this case raises circumstances regarding the effectiveness of counsel which are at least "debatable" among jurists of reasons, or at least "deserve encouragement to proceed further."

With respect to the failure of counsel to request an instruction that the jury must find the final balancing between aggravating and mitigating circumstances beyond a reasonable doubt, the Court acknowledged that there is at least now a split in the Circuits on this issue after the Sixth Circuit decision in United States v. Gabrion II, 648 F.3d 307, 325-329 (6th Cir. 2011). (Doc. 551, p. 165). While rehearing en banc has been granted in Gabrion II, vacating the decision, the Sixth Circuit has yet to announce an en banc decision. But the panel decision itself shows that the issue is at least debatable among jurists of reason and it is also an issue that the Supreme Court has not yet addressed. Whether it should have been

obvious to counsel, based upon <u>Ring v. Arizona</u>, 536 U.S. 584 (2002) and its progeny, especially in the absence of any clear and unequivocal Supreme Court or Eleventh Circuit authority on this issue, raises at least an issue that it is "debatable" or deserving of "encouragement to proceed further."

Finally, the failure of counsel to object to the Court's instructions regarding claimed future dangerousness because of the "risk" of escape, without explaining what a "risk" might be, is yet an additional issue of ineffective assistance of counsel worthy of further consideration on appeal, especially given the improper argument by Government counsel claiming that the Government itself would be unable to secure the Petitioner should he receive a life sentence, thereby creating aggravating circumstances through its own conduct. <u>See</u>, <u>United Sates v. Daryl Johnson</u>, Case No 02 C 6998 (N. D. Ill.) (2010) (copy attached) (Relief granted because counsel ineffective in failing to challenge the Government's false claims concerning its ability to prevent a defendant from posing a danger to others "on the street or in prison."). Again, as the Court discussed in its Order, there is no specific controlling authority on this issue, especially under the unique circumstances of this case, and some arguable authority in the Petitioner's favor. (Doc. 551, pp. 159-160). Again this is a "debatable" issue worthy of further consideration by the Court of Appeals, especially in combination with the other ineffective assistance of counsel issues.

With respect to Petitioner's claims of ineffectiveness with respect to trial counsel's failure to present citizenship figures in challenging the underrepresentation of the Hispanic community in the Gainesville Division, the Court assumed that it was deficient performance for trial counsel not to present the required citizenship figures in determining the juror eligible population (Doc. 551, pp. 154-155), but nevertheless concluded that Petitioner has not shown sufficient prejudice to deserve relief, because "[t]he Eleventh Circuit has consistently found that a defendant cannot satisfy the second element of a fair cross-section challenge when the absolute disparity between the percentages does not exceed 10%." (Doc. 551, p. 179). However, while it is true that the Eleventh Circuit has insisted on a 10% absolute disparity when examining populations that exceed 10%, the former Fifth Circuit, whose holdings prior to 1981 are binding on the Eleventh Circuit, never insisted on such a statistical test for a population, such as the Hispanic population here, which is less than 10%. Otherwise, a jury selection system could totally exclude a cognizable class without there being a complaint either under the Constitution or the Jury Selection and Service Act. United States v. Butler, 615 F.2d 685, 686 (5th Cir. 1980); United States v. Maskeny, 609 F.3d 183, 190 (5th Cir. 1980). Indeed, the Fifth Circuit has continued to examine jury representativeness through statistics other than absolute disparity, such as standard deviation analysis. See, McGinnis v. Johnson, 181 F 3d 6686, 690, fn 6 (5th Cir. 1999).

12

But more important, the Supreme Court has never endorsed the sole reliance on a minus 10% absolute disparity test, a totally illogical and nonsensical statistical test for a cognizable population of less than 10% (Doc. 545, pp. 26-28), and has long recommended the flexible use of various statistical tests, such as comparative disparity and standard deviation analysis, including its more recent decision in Berghuis v. Smith, 130 S.Ct. 1382, 1383 (2010)("Neither Duren nor any other decision of this Court specifies the method or test courts must use to measure the representation of distinctive groups in jury pools"); Alexander v. Louisiana, 405 U.S. 625, 630 (1972)("This Court has never announced mathematical standards for the demonstration of 'systematic exclusion,' but has rather emphasized that a factual inquiry is necessary in each case that takes into account all explanatory factors."). This is an area where there is obviously room for "debate" among "jurists of reason," most notably the United States Supreme Court, and an issue that "deserves encouragement to proceed further."

The same applies to the issue of the sole reliance on voter registration lists and the failure to follow up on non-returned questionnaires as systematic factors resulting in underrepresentation. While arguably dicta in United States v. Carmichael, 560 F.3d 1270, 1279 (11th Cir. 2009, is contrary to the Defendant's position, other reasonable jurists have seen it otherwise. E.g., Broadway v. Culpepper, 439 F.2d 1253, 1257 (5th Cir. 1971). And the provisions of 28 U.S.C. §

13

1863(b)(2) could not be clearer. Suffice it to say this is at least a controversial issue subject to reasonable debate. (See, Doc. 545, pp. 29-31).

In sum, the combination of ineffective assistance issues raised in Petitioner's Motion to Vacate and about which the Court heard significant evidence are unique issues worthy of further consideration and are debatable among reasonable jurists. Petitioner respectfully requests that the Court grant a COA regarding these claims, both separately and cumulatively.

### III.    Constitutional Issues

The Defendant's constitutional issues regarding the issue of whether the Federal Death Penalty Act, 18 U.S.C. §3591, et. seq. (the "FDPA") is unconstitutional on its face or as applied because it does not require that the aggravating factors for the imposition of the death penalty or non-statutory aggravating factors be alleged in the indictment is a claim that has been rejected by the Eleventh Circuit, but has yet to be addressed by the United States Supreme Court. This is a debatable issue under Ring v. Arizona and its progeny, which may someday sufficiently interest the Supreme Court for it to grant certiorari. Accordingly, in order to be able to preserve this issue, counsel request that Court authorize a COA on these constitutional claims.

This 2nd day of October, 2012.

[Signatures on next page]

14

Respectfully submitted,

s/John R. Martin
John R. Martin
Georgia Bar No. 473325

44 Broad Street, N.W.
Suite 202 The Grant Building
Atlanta, Georgia  30303
404.522.0400
jack@martinbroslaw.com

s/Sandra Michaels
Sandra Michaels
Georgia Bar No. 504014

44 Broad Street, N.W.
Suite 202 The Grant Building
Atlanta, Georgia  30303
404.522.0400
slmichaels@mindspring.com        Counsel for William LeCroy

15

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2012, I electronically filed the foregoing **Motion and Memorandum for Certificate of Appealability** with the Clerk of Court using the CM/ECF system.

s/John R. Martin

JOHN R. MARTIN
