UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Criminal Action No. |
| v. | ) | 2:02-CR-38-RWS-SSC |
| | ) | |
| WILLIAM EMMETT LECROY, JR., | ) | |
| | ) | |
| Respondent. | ) | |
| | | |
| WILLIAM EMMETT LECROY, JR., | ) | Civil Action No. |
| | ) | 2:08-CV-227-RWS |
| Petitioner, | ) | |
| | ) | Prisoner Habeas Petition |
| v. | ) | 28 U.S.C. § 2255 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **Execution Date:** |
| | ) | **September 22, 2020** |
| Respondent. | ) | |

## PETITIONER'S MOTION TO RESET OR MODIFY EXECUTION DATE IN ORDER TO IMPLEMENT COURT'S ORDER APPOINTING COUNSEL

Now comes Petitioner William Emmett Lecroy, Jr., through counsel, and moves this Honorable Court for an order to modify the date of execution of Mr. Lecroy's death sentence, currently set for September 22, 2020, until such time as his attorneys can fulfill the duties they were appointed to perform under 18 U.S.C. § 3599. The duties that flow from this Court's May 25, 2007 appointment order (Doc. 479) include providing effective legal and investigative assistance to their client in preparation for clemency proceedings and other possible legal challenges, as well as

{1}

being present for the client and giving him counsel at the time of his execution.  Due to the circumstances caused by the global COVID-19 pandemic as well as undersigned counsel's unique medical vulnerability, counsel is unable to represent Mr. Lecroy effectively as contemplated by statute and in accordance with this Court's appointment order.   This Court has authority to reset Mr. Lecroy's execution date in accordance with 28 C.F.R. § 26.3(a) and the All Writs Act to allow for counsel's appointment to be meaningful.   Furthermore, resetting Mr. Lecroy's execution date would allow his execution to proceed in conformity with Ga. Code Ann. § 17-10-41,  which provides that at the time of the execution, "the convicted person may request the presence of his or her counsel."  Moreover, 18 U.S.C. § 3596 provides that the implementation of a federal death sentence shall be in the "manner prescribed by the law of the State in which the sentence in imposed."  This is not a Motion for a Stay of Execution or an Injunction.   Rather, Petitioner is asking that the Court schedule Mr. Lecroy's execution for a date certain in Spring 2021 as would be appropriate in light of the facts presented in this motion.

In support of this motion, Petitioner would show as follows:

1. Thirteen years ago, on May 25, 2007, this Court appointed John R. Martin and Sandra Michaels to represent Petitioner in federal habeas corpus proceedings.  (Order of CJA 30 appointing Att'y Martin, Doc. 477; Order of CJA 30 appointing Att'y Michaels, Doc. 478; Order granting mot. to appoint counsel, Doc. 479.).   The court appointed Mr. Martin as lead counsel.   (Order granting mot. to appoint counsel, Doc. 479).   This

{2}

appointment was made under the authority of 18 U.S.C. § 3599. Pursuant to that statute, Petitioner Lecroy is entitled to assistance from his attorneys "throughout **every** subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant." 18 U.S.C. § 3599(e) (emphasis added).

2. John R. Martin and Sandra Michaels are still Mr. Lecroy's appointed counsel, along with Stephen Ferrell of Federal Defender Services of Eastern Tennessee, Inc., (FDSET) who was more recently appointed in 2019. (Order granting motion to appoint FDSET, Doc. 584). The basis for asking this additional appointment was to provide the resources available from a federal defender's office. (Mot. to appoint FDSET, Doc. 583, ¶¶7-9, pp.5-7).

3. Ten years ago, Mr. Martin was diagnosed with chronic lymphocytic leukemia. Because of this condition, Mr. Martin's immune and pulmonary systems are significantly compromised. This illness is the result of Mr. Martin's exposure to Agent Orange when he was serving as a Second Lieutenant with the United States Army in Viet Nam.

4. Co-counsel Michaels is married to Mr. Martin and lives with him. Due to concerns for Mr. Martin's health, both Ms. Michaels and Mr. Martin have been sheltering at home and must be extremely careful about face-to-face interactions with people outside their immediate household.

5. Since early March of 2020, neither attorneys Martin nor Michaels have personally visited any penal facility due to the possibility of catching the virus. Furthermore, they attend any court proceedings remotely and work exclusively from home. These precautions are taken on the advice of Mr. Martin's physician. *See* Attachment 1, Aug. 17, 2020 Letter from Dr. Eric D. Mininberg.

6. Also, since March 2020, attorneys from FDSET have been required to work from home and suspend any business-related travel. Ordinary legal work and investigations have been suspended in light of the pandemic.

7. During most of this same time period, FCI Terre Haute has been closed to in-person visitation for fear of contagion. Any introduction of the virus into the prison obviously puts both prisoners and staff at risk.

8. On July 31, 2020, Mr. Lecroy and his attorneys received notice that his execution date had been set for September 22, 2020.

9. By telephone communication with Mr. Lecroy, undersigned counsel learned that Mr. Lecroy would need to submit the name of any attorney witnesses by August 23, 2020. In this same telephone call, Mr. Lecroy

{4}

indicated that it was his wish to name his longest-serving and lead attorney, John R. Martin, to be his attorney witness at his execution.

10. Although Mr. Martin would normally be willing to fulfill all of his obligations as Mr. Lecroy's attorney, he is unable to attend the execution as his attorney witness.  Because of his compromised immune and pulmonary systems due to his chronic illness, his doctor has told him he must not travel.  See Attach. 1, Aug. 17, 2020 Letter from Dr. Mininberg.

11. Not only is travel to Terre Haute where the execution is scheduled impossible, but according to reports from attorneys who attended recent executions, counsel would be assigned to a small room before the execution with others and transported to the execution site with others in a crowded van making social distancing impossible. For these reasons, Mr. Martin will be unable to meet with Mr. Lecroy in person and will not be able to attend his execution.

## ARGUMENT

I.   **Respondent's  Setting of an Execution Date for William Lecroy in the Middle of a Contagious Pandemic Prevents his Lead Attorney from Fulfilling the Duties this Court Appointed him to do.  For this Reason, the Court Should Reset it to a Date in April or May of 2021.**

By setting William Lecroy's execution date in the middle of a deadly pandemic, the Government is denying Mr. Lecroy the essential services from both his lead attorney and first co-counsel who were appointed by this Court to represent him in his death penalty litigation until the completion of all proceedings, including his execution. Because of Mr. Martin's medical condition, Mr. Martin and Ms.

Michaels cannot travel or meet with their client without endangering Mr. Martin's health. Neither attorney can meet in person with Mr. Lecroy during this most critical time when the advice of counsel is most critical and also very personal in nature.

For this reason, this Court must order that Mr. Lecroy's execution date be reset until sometime after a vaccine is available so that his lead counsel may fulfill all of the duties this Court appointed him to perform. This will almost certainly mean that the Government will be able to carry out its execution in the Spring of 2021. In addition, the execution date must be reset so that FDSET counsel can provide the support and assistance to primary counsel he was appointed by this Court to provide. This is impossible to do under the present circumstances for the reasons detailed herein.

### A.      This Court has the Authority to Modify Mr. Lecroy's Execution Date.

This Court, that sentenced Mr. Lecroy to death, has jurisdiction to enforce its judgment. *Root v. Woolworth*, 150 U.S. 401, 412 (1893) ("Where the court possesses jurisdiction to make a decree, it possesses the power to enforce its execution."). Any decision from this Court to modify Mr. Lecroy's execution date necessarily takes precedence over the original date set by the Federal Bureau of Prisons ("BOP"). If this Court issues an order regarding implementation of an execution, that order controls (and supersedes) any action by BOP. In fact, the language of the regulations shows that a court order renders the pertinent regulation inoperative. *See e.g.* 28 C.F.R. § 26.3(a) ("Except to the extent a court orders otherwise," BOP

{6}

may select the date, time, place and method of the execution); 28 C.F.R. § 26.4 ("*Except to the extent a court orders otherwise*," BOP may give notice of execution to prisoner and regulate access to attorneys, family and spiritual advisors) (emphasis added). This language specifically subordinates decisions by the BOP to Orders from this Court.

Likewise, both the BOP Execution Protocol and the July 2019 Addendum to the BOP Execution Protocol similarly recognize that sentencing courts have the power to set dates. For example, in connection with "establishing an execution date," it is acknowledged that the Director of BOP is authorized to move forward with setting an execution date only after "the sentencing judge signs the appropriate Judgment and Order" and, again, "except to the extent a court orders otherwise." The Protocol provision relating to the Warden's notification of the death-sentenced prisoner, likewise, states that "If the execution date is set by a judge, the Warden will notify the condemned individual, in writing, as soon as possible." In connection with news media access to witnessing the execution, the Protocol describes a process for media representatives to be notified after "an execution date is set by the court/Director of the BOP"; and, as the more recent Addendum to the Protocol recognized, the "procedures utilized by the BOP to implement federal death sentences" could be modified at the discretion of the Director as necessary in order to "comply with specific judicial orders." *See* Doc. 39-1, Administrative Record, *Roane et. al. v. Barr*, 1:19-mc-00145-TSC, at 0874, 0883, 0915 (D.D.C. Aug. 30, 2019).

{7}

It is also important to note that these provisions make clear that an order from this Court setting or modifying Mr. Lecroy's execution would not be a stay or an injunction. Because the Government's regulations are conditioned upon this Court's action, issuance of an order setting a different execution date does not enjoin a government action; it instead renders the BOP date-setting regulations, by their own terms, non-operational. *See* 28 C.F.R. § 26.3; 28 C.F.R. § 26.4.

Because this Court has always had authority to appoint counsel under 18 U.S.C. § 3599, it also has authority to see that any such order is effectively carried out. Ensuring counsel's ability to carry out their duties during the execution is entirely within this Court's jurisdiction pursuant to its lawful order of appointment. Under the All Writs Act, the authority for this Court to appoint counsel to represent their client through execution of sentence carries with it the authority for the Court to modify Mr. Lecroy's execution date so that counsel may fully comply with the Court's Order.

Congress has provided for the statutory right to counsel in death penalty cases. 18 U.S.C. § 3599. "On its face, this statute grants indigent defendants a mandatory right to qualified legal counsel." *McFarland v. Scott*, 512 U.S. 849, 854 (1994). This explicitly includes clemency proceedings. 18 U.S.C. § 3599(e).

This Court retains authority to issue orders that insure that appointed counsel are able do what this Court appointed them to do. Under the All Writs Act, 28 U.S.C. § 1651(a), federal courts are permitted to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and

principles of law." *See also Nields v. Bradshaw*, No. 1-03-cv-019, 2010 WL 148076, at \*1 (S.D. Ohio Jan. 11, 2010) ("The power to appoint counsel . . . and provide for expert services to those counsel could be completely frustrated if the Court could not order reasonable ancillary relief to make those provisions meaningful."). Since this Court appointed counsel under 18 U.S.C. § 3599, which appointment is ongoing, and because counsel has a duty personally to advise their client and to attend his execution, this Court has jurisdiction to fashion an order to ensure that these duties are carried out consistent with its original appointment order. Currently, undersigned counsel is unable to conduct any of the investigative or advisory work required of death penalty counsel once an execution date is set in light of his own unique vulnerability to COVID-19.

The All-Writs Act gives this Court the discretion and the authority to take action to ensure that its other orders are properly and effectively implemented. Federal regulations, and indeed historical practice, give this Court the ultimate authority to set or modify execution dates set by the BOP. That combination gives this Court the power to reset Mr. Lecroy's execution date until a date certain in the Spring of 2021 so that his counsel may complete the duties this Court set out for them when they were appointed.

### B. Appointed Counsel is Unable to Fulfill Their Obligations to Mr. Lecroy Because of the Global Coronavirus Pandemic.

The facts now before this Court show that the setting of an execution date in the middle of this pandemic prevents Mr. Lecroy's attorneys from fulfilling one of their most important duties as appointed counsel in a death-penalty habeas case:

visiting their client while preparing the clemency petition and in the time leading up to his execution. And finally, counsel must be able to personally attend that execution per their client's request. Although the BOP is not currently limiting counsel's right to visit with their client or to attend his execution, the Government's setting of an execution date in the middle of a pandemic carries with it an identical effect: It prevents Mr. Martin and Ms. Michaels from meeting with their client in-person and prevents them from attending their client's execution.

The Fourteenth Amendment guarantees prisoners meaningful access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 822 (1977). An inmate's opportunity to confer with counsel is a particularly important constitutional right which the courts will not permit to be unnecessarily abridged. *Dreher v. Sielaff*, 636 F.2d 1141, 1146 (7th Cir. 1980). It is through counsel's presence that the inmate has access to the courts until his life is over. This Court's order ensures the inmate's access to counsel. These legal principles are rendered meaningless when the Government insists, after nearly 20 years, that Mr. Lecroy be executed now, in the middle of a deadly global pandemic. Resetting the date will ensure that Mr. Lecroy's rights are protected.

Appointed counsel has a duty to confer personally with their client in preparing their client's clemency petition. "Clemency is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted." *Herrera v. Collins*, 506 U.S. 390, 411-12 (1993). Conversations about counsel's ultimate efforts to present the

client's case in clemency will naturally be very personal in nature and cannot be properly done without face-to-face conversation.    This is recognized by expert counsel as well as ABA Guidelines:

> All interviews with the client and potential witnesses in support of clemency must be in person, face-to-face, one-on-one interviews. This is necessary for two reasons. First, in order to receive accurate information in an interview, the interviewer must build a rapport with the witness. *See* Supplementary Guidelines 5.1.C & 10.11.C. Many of the topics that must be explored are highly sensitive, and witnesses must be given the appropriate space and support in order for them to feel comfortable enough to discuss those sensitive topics.

Attachment 2, ¶18, Declaration of Carol Wright.    Effective representation in clemency requires face-to-face conversations.

And even more important for this present motion, counsel must effectively confer with and advise their client regarding whether to pursue final litigation options, obtain religious counseling, and witness the execution.  As Attorney Wright says in her declaration:

> In my experience, this is a near-sacred duty of appointed counsel, particularly appointed counsel who has a long-standing relationship of confidence and trust with the client.  Clients need someone they can trust to talk to in the last days and hours of their lives.  Though these sessions are very difficult for appointed counsel, it is an essential duty they have been appointed to carry out.  And, when all else fails, it is appointed counsel's duty to be a witness the actual execution, to make sure it is conducted in conformance with the laws and protocols set forth and to note any irregularities or problems.  Finally, it is counsel's duty to be present so that his client may see a friendly face in the crowd of witnesses so that he knows someone is there on his side.

Attach. 2, ¶26, Declaration of Carol Wright.  Mr. Lecroy has the right to have his lead attorney fulfill these obligations for him.  However, during this pandemic, his access to needed advice and counsel has been effectively curtailed.

{11}

Counsel's presence in the days leading up to the execution, and at the execution itself, is also essential. The Georgia death penalty statute affirmatively gives the condemned prisoner the right to have his counsel present at his execution. Ga. Code Ann., § 17-10-41.  Because this right is derived from the Georgia statute rather than a non-binding protocol, the BOP must follow it.  *In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 133 (D.C. Cir. 2020) (Rao, J., concurring in judgment).  Even the United States Department of Justice ("DOJ") recognizes the importance of counsel's in-person access to a client during this time by expressly providing for it in the regulations for the week before the execution, *see* 28 C.F.R. § 26.4(b), and mandating it for the execution itself, if requested. *See* 28 C.F.R. § 26.4(c) ("In addition to the Marshal and Warden, the following persons shall be present at the execution: [ . . . ] (ii) Two defense attorneys.").

Counsel's presence is not merely a concession or for emotional support of the prisoner.  First, counsel has a duty to ensure that their client is mentally competent to proceed with execution. *See Panetti v. Quarterman*, 551 U.S. 930, 935-36 (2007) (Eighth Amendment prohibits execution of inmate who is incompetent, even if earlier assessments found him competent).  Second, counsel's presence is necessary in protecting their client's First Amendment rights to access to religious counseling and services, as well as ensuring that he is allowed to express himself in his last wishes and final words.  And finally, counsel's presence at the execution is necessary in case potential legal violations occur. In a botched 2014 execution, for example, the presence of counsel was critical to the prisoner's gaining access to the

{12}

courts through an emergency petition when the execution drugs failed to bring about death, leaving him gasping for air for nearly two hours.[1] For all of these reasons, counsel's ability to be present physically with their client is absolutely necessary in fulfilling the obligations this Court appointed them to do.

If travel to FCI Terre Haute were not so fraught at this time of pandemic and if social distancing and other protections were not impossible,[2] Attorneys Martin and Michaels would certainly fulfill their appointed obligations, including witnessing their client's execution. However, because of Mr. Martin's illness, his doctor has strongly advised him against going into any penal institution. Attachment 1, Aug. 17, 2020 from Dr. Mininberg.. Also, Sandra Michaels is covered by this restriction because she lives with Mr. Martin and could infect him with the virus if she were to contract it from attending Mr. Lecroy's execution.

Any modification of the execution date by this Court would necessarily be temporary and most likely, short in duration. As announced by the director of the National Institute of Allergy and Infectious Diseases, Dr. Anthony Fauci, there is a good chance the United States will have an effective vaccine by the end of 2020 or very early 2021. *Dr. Anthony Fauci & CDC Director Senate Testimony Transcript*

---

[1] *See* Berman, *Arizona execution lasts nearly two hours; lawyer says Joseph Wood was 'gasping and struggling to breathe,'* Wash. Post (July 23, 2014), https://www.washingtonpost.com/news/postnation/wp/2014/07/23/arizona-supreme-court-stays-planned-execution/.

[2] That fact is made evident by the Government's own warning on the website for FCI Terre Haute: "All visiting at this facility has been suspended until further notice." https://www.bop.gov/locations/institutions/tha/index.jsp, last visited on August 24, 2020.

*May 12* at 32:06-32:41, Rev (May 12, 2020), https://www.rev.com/blog/transcripts/dr-anthony-fauci-cdc-director-senate-testimony-transcript-may-12. A new execution date can be set by this Court in that time period, a short delay of less than six months, that would allow counsel to fulfill their duties under this Court's Order of appointment.

**RELIEF REQUESTED**

Petitioner Lecroy requests that this Court order a hearing on these issues. Following this hearing, Petitioner Lecroy requests that this Court modify the date for execution of his death sentence from September 22, 2020 until a date in April or May, 2021 so that his appointed lead counsel may fulfill the duties this Court appointed him to do, including consult with him in person and, when necessary, attend his execution as his attorney witness.

This 24th day of August, 2020.

Respectfully submitted,

BY:    /s/ John R. Martin
John R. Martin
1099 St. Louis Pl
Atlanta, Georgia  30306
Ph: (404) 433-7446
jack@martinbroslaw.com
*Attorney for Petitioner William Lecroy, Jr.*

Sandra Michaels
965 Virginia Avenue NE
Atlanta, Georgia 30306
Ph: (404) 312-5781
SLMichaelsLaw@gmail.com

Stephen Ferrell
Federal Defender Services of Eastern
Tennessee, Inc.
800 South Gay Street, Suite 2400
Knoxville, TN  37929
Ph:  (865) 637-7979
Stephen_Ferrell@fd.org

{15}

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2020, the foregoing PETITIONER'S MOTION TO TEMPORARILY SUSPEND EXECUTION OF DEATH SENTENCE, was filed electronically. Service was made upon Filing Users through the Electronic Filing System.  Service was accomplished via regular U.S. Mail on any participating party or counsel who was not served through the Electronic Filing System.

/s/ John R. Martin
John R. Martin