IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) Case Nos. 2:02-CR-38-RWS-SSC and |
| | )         2:08-CV-083-RWS |
| | )            (Capital Case) |
| | )   (Execution Date: Sept. 22, 2020) |
| | ) |
| WILLIAM EMMETT LECROY, JR. | ) |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO RESET OR MODIFY EXECUTION DATE**

The United States of America, by its undersigned attorneys, files this Response in Opposition to Defendant William Emmett LeCroy, Jr.'s Motion to Reset or Modify his Execution Date. Doc. 593. For the reasons set forth below, LeCroy's motion should be denied.

**INTRODUCTION**

Defendant LeCroy was convicted and sentenced to death more than 16 years ago for the murder of Joann Tiesler. He received thorough review of his conviction on direct appeal and on collateral review under 28 U.S.C. § 2255; his conviction and sentence were repeatedly affirmed; and his execution is currently scheduled for September 22, 2020. On August 24, 2020, more than three weeks after the Bureau of Prisons (BOP) set that execution date, LeCroy filed a motion asking this

1

Court to override that determination and set a new execution date for Spring 2021. According to LeCroy, this novel remedy is required because one of his attorney's health condition, combined with the COVID-19 pandemic, prevent counsel from fulfilling their asserted duties in seeking clemency and attending LeCroy's execution. Doc. 593 at 9-14.

LeCroy's motion should be denied. LeCroy does not deny that the Executive Branch had the authority to set his execution date. Now that it has done so, this Court could alter that date only if LeCroy satisfies the criteria for a stay of execution or an injunction, two remedies that he expressly disclaims. And while LeCroy invokes two other sources of purported authority, neither the federal regulation he cites nor the All Writs Act authorizes the Court to reset or postpone the execution date in the present circumstances.

But even assuming the Court possesses the authority to change or modify an execution date set by the Executive Branch, it would be a manifest abuse of discretion to do so here. LeCroy fails to identify any legitimate basis for delaying his execution date until Spring 2021 or perhaps even later depending on counsel's health and future developments related to the COVID-19 pandemic. Nor does he identify a violation of any constitutional or statutory right or court order. While

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

2

lead counsel's health concerns are unfortunate, LeCroy has at least one other court-appointed lawyer capable of meeting him in person or witnessing his execution. He also can communicate with lead and co-counsel—who previously submitted a clemency application for him in 2016—via unmonitored video or teleconference services. Particularly when weighed against the last-minute nature of LeCroy's request and the government's overwhelming interest in the enforcement of a criminal sentence imposed for a heinous crime, those circumstances do not support the unprecedented relief LeCroy seeks.

## BACKGROUND

### I.      Legal Background

Since the First Congress "made a number of" federal offenses "punishable by death" in the Crimes Act of 1790, *Bucklew v. Precythe*, 139 S. Ct. 1112, 1122 (2019), Congress has not prescribed rules for fixing the date of execution. That omission is consistent with the fact that "at common law the sentence of death was generally silent as to the precise day of execution." *Holden v. Minnesota*, 137 U.S. 483, 496 (1890). The Supreme Court has determined, however, that the Constitution permits either the Executive or Judiciary to set a date for execution. *Id.* at 495-96;

see also *Implementation of Death Sentences in Federal Cases*, 58 Fed. Reg. 4898-01, at 4899-4900 (Jan. 19, 1993) (describing nineteenth-century practices).

Consistent with that understanding and history, the Attorney General has promulgated regulations providing, in relevant part, that "[e]xcept to the extent a court orders otherwise, a sentence of death shall be executed . . . [o]n a date and at a time designated by the Director of the Federal Bureau of Prisons," "[a]t a federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons," "[b]y a United States Marshal designated by the Director of the United States Marshals Service," and "[b]y intravenous injection of a lethal substance or substances in a quantity sufficient to cause death." 28 C.F.R. § 26.3(a). The regulations also direct federal prosecutors to file a "proposed Judgment and Order" with the district court stating that "[t]he sentence shall be executed by a United States Marshal designated by the Director of the United States Marshals Service," "[t]he sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death," "[t]he sentence shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons," and "[t]he prisoner under sentence of death shall be

committed to the custody of the Attorney General or his authorized representative for appropriate detention pending execution of the sentence." 28 C.F.R. § 26.2(a).

While Congress has not set rules for fixing the date of federal executions, it has at various times set rules establishing the method of execution. As relevant here, in 1994, Congress enacted the Federal Death Penalty Act (FDPA). That statute provides, in a section entitled "[i]mplementation of a sentence of death," that "[a] person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence," and "[w]hen the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). The statute further provides that "[i]f the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

prescribed by such law." *Id.*[1]

## II.     Relevant Factual and Procedural Background

LeCroy murdered Joann Tiesler less than two months after being released from prior terms of state and federal imprisonment for serious felony offenses. *United States v. LeCroy*, 441 F.3d 914, 918-19 (11th Cir. 2006). LeCroy was planning to abscond from federal supervision, including the psychosexual examination he had been ordered to undergo, and needed a vehicle. *Id.* at 919. Tiesler was a nurse who lived in a cabin within walking distance of the cabin where LeCroy was staying. *Id.* at 919-20.

On October 7, 2001, while Tiesler was visiting her fiancé, LeCroy broke into her residence armed with a loaded shotgun, a knife, and plastic cable ties. After Tiesler returned to her cabin, LeCroy struck her in the back of her head with his shotgun and discharged the weapon in the hallway outside her bedroom. LeCroy then tied Tiesler's ankles together and bound her hands behind her back with the

---

[1] Eight federal defendants have been executed since enactment of the FDPA: Timothy McVeigh, Juan Raul Garza, Louis Jones, Jr., Daniel Lewis Lee, Wesley Ira Purkey, Dustin Lee Honken, Lezmond Mitchell, and Keith Dwayne Nelson. Like here, BOP has generally set the date for the respective executions. In none of those cases did a court reset the execution for a date other than the one set by BOP.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

plastic cable ties. He stripped Tiesler and forced her to kneel at the foot of her bed, where he vaginally and anally raped her. Afterward, LeCroy strangled Tiesler with an electrical cord; slit her throat; and stabbed her repeatedly in the back. LeCroy left Tiesler's naked body bound on her bed, where she was discovered by neighbors the following day. He loaded Tiesler's Ford Explorer with supplies and drove toward Canada. *Id.* at 919-20.

LeCroy was apprehended two days later at the U.S.-Canadian border driving Ms. Tiesler's vehicle. The knife LeCroy used to kill Ms. Tiesler was in the vehicle as well as two notes LeCroy had written on the back of a torn map. One note stated, "Please call the police and report this vehicle as stolen. Thanks, The Thief," and the other note stated, "Please, please, please forgive me Joanne ... you were an angel and I killed you. Now I have to live with that and I can never go home. I am a vagabond and doomed to hell...." *Id.* at 919-20 & nn. 2-3.

A jury convicted LeCroy of taking a motor vehicle by force, violence, and intimidation from Joann Tiesler resulting in her death, in violation of 18 U.S.C. § 2119(3). 441 F.3d at 920. At the conclusion of the sentencing phase, the jury returned a sentence of death. *Id.* LeCroy was remanded to federal custody at the United States Penitentiary in Terre Haute, Indiana (FCC Terre Haute) where he

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

has remained on death row. *See id.*

On direct appeal, the Eleventh Circuit unanimously affirmed LeCroy's conviction and sentence. *LeCroy*, 441 F.3d at 914-31. The Supreme Court denied his petition for a writ of certiorari. 550 U.S. 905 (2007). The next month, LeCroy moved this Court for the appointment of counsel to prepare and file a collateral attack on his behalf. Doc. 476. This Court granted that motion and appointed John R. Martin and Sandra L. Michaels. Doc. 479.

In April 2008, LeCroy filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Doc. 493. LeCroy raised numerous issues, including various claims of ineffective assistance of counsel. After a three-day evidentiary hearing, this Court denied the motion. Doc. 551. The Eleventh Circuit unanimously affirmed, 739 F.3d 1297 (11th Cir. 2014), and the Supreme Court again denied LeCroy's petition for a writ certiorari. 575 U.S. 904 (2015).

In April 2015, LeCroy filed a letter motion that, citing 18 U.S.C. § 3599(e), sought reappointment of attorneys Martin and Michaels "for whatever remaining legal processes are available to him, as well as a request for commutation of his sentence by the President." Doc. 577. This Court granted that motion. Doc. 578.

In December 2016, LeCroy filed an application for executive clemency.

Declaration of Kira Gillespie (attached as Exhibit 1) at ¶5. On January 20, 2017, LeCroy requested to withdraw his petition, and the Office of the Pardon Attorney administratively closed LeCroy's clemency petition without prejudice on January 24, 2017. *Id.*

In December 2018, LeCroy moved this Court for appointment of the Federal Defender Services of Eastern Tennessee (FDSET) as additional counsel to assist in representing him "through the conclusion of proceedings related to his capital conviction and sentence of death, including executive clemency proceedings." Doc. 583 at 1. LeCroy's motion emphasized the potential assistance additional counsel could provide in seeking clemency, arguing in particular that FDSET's "current availability to assist the undersigned will be critical to *quickly* reviewing a voluminous case file [and] undertaking the investigation and preparation of a clemency petition in a *limited time-frame*." *Id.* at 5 (emphasis added). This Court granted the motion in January 2019, Doc. 584, and Stephen Allen Farrell of FDSET entered an appearance on behalf of LeCroy in March 2019. Doc. 585. As of the date of this filing, however, LeCroy has not submitted a renewed clemency petition to the Pardon Attorney. Gillespie Decl. ¶6.

LeCroy remains at FCC Terre Haute. In March 2020, BOP announced that

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

in-person legal visits generally would be suspended to mitigate the risk of exposure to COVID-19 by external visitors. Declaration of Tom Watson (attached as Exhibit 2) at ¶4. Because BOP recognizes that inmates' access to legal counsel remains a paramount requirement, however, it allows for case-by-case accommodations of in-person legal visits. *Id.* ¶5. In addition, it continues to provide for unmonitored legal calls, in order to ensure the confidentiality of inmates' communications with their counsel. *Id.* ¶7.

Since BOP began its modified operations, Mr. Ferrell has requested one in-person meeting with LeCroy, which was scheduled for August 24, 2020. Watson Decl. ¶5. That request would have been accommodated, but it was ultimately cancelled by Mr. Ferrell. *Id*. Since March 2020, LeCroy has had 10 unmonitored calls with legal counsel. *Id.* ¶7. Unmonitored video conferencing with outside counsel has also been available since mid-July 2020, but no consultations with counsel via video conference have been requested by LeCroy or his counsel. *Id.* ¶8.

On July 31, 2020, the BOP notified LeCroy and his counsel that it had scheduled LeCroy's execution for September 22, 2020. Doc. 593 at 4. The government entered a notice on the docket on August 1, 2020, further providing notice of the execution date. Doc. 591.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

## ARGUMENT

**I.    The Court Lacks Authority to Enter LeCroy's Requested Order Resetting the Execution Date Properly Set by the Bureau of Prisons.**

**A**. **This Court Cannot Upset The Execution Date Unless It Enters a Stay Or an Injunction, Remedies That LeCroy Expressly Disclaims.**

The Executive Branch has long possessed the authority to set an execution date in federal death penalty cases. *See* pp. 3-4, *supra*. That authority dates back to the founding era and is now codified in the 1993 regulations, which state that a federal death sentence shall be executed "[o]n a date and at a time designated by the Director of the Federal Bureau of Prisons," and "[i]f the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons when the stay is lifted." 28 C.F.R. § 26.3(a)(1).[2]

Consistent with this authority, the BOP has lawfully scheduled LeCroy's

---

[2] The Executive Branch's authority to set an execution date, and the Attorney General's codification of that authority in the 1993 regulations, is consistent with the Executive Branch's constitutional and statutory duties generally. *Cf. United States v. Tipton*, 90 F.3d 861, 902-03 (4th Cir. 1996) (concluding that "absent directly preempting congressional action, the Attorney General had constitutional and statutory authority to provide by regulation the means for executing death sentences imposed under" pre-FDPA law).

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

execution for September 22, 2020. And now that the BOP has properly set an execution date, this Court—to the extent it has the ability to consider the issue at all[3]—may postpone or halt the execution only through an equitable remedy such as an injunction or a stay. *See Nken v. Holder*, 556 U.S. 418, 428 (2009) (defining an "injunction" as "a means by which a court tells someone what to do or not to do," and a "stay" as "halting or postponing some portion of [a] proceeding, or … temporarily divesting an order of enforceability"). But such equitable remedies are "not available as a matter of right," *Grayson v. Allen*, 491 F.3d 1318, 1322 (11th Cir. 2007), and instead require an applicant to meet several stringent requirements. Specifically, this Court may grant an injunction (or a stay of execution) only if LeCroy shows that: "(1) he has a substantial likelihood of success on the merits;

---

[3] LeCroy identifies no precedent for this Court's authority to grant the relief that he requests. Instead, to the extent LeCroy effectively seeks to preclude implementation of his sentence in light of issues with counsel's in-person attendance, his requested relief resembles the type of challenge to the Executive's implementation of a sentence that is properly brought under 28 U.S.C. § 2241 in an inmate's district of confinement—here, the Southern District of Indiana. *See Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1352 (11th Cir. 2008). As explained below, the court of appeals with jurisdiction over that district court recently rejected LeCroy's interpretation of the FDPA and BOP regulations governing execution witnesses. *See* pp. 24-26, *infra*.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

(2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest." *Long v. Sec'y, Dep't of Corr.*, 924 F.3d 1171, 1176 (11th Cir. 2019) (quotation marks omitted); *see Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (stating injunction factors).[4]

Those factors set a high bar that LeCroy does not even attempt to meet. In fact, he expressly denies seeking those remedies at all, claiming that what he is asking this Court to do would "not enjoin a government action." Doc. 593 at 2, 8 ("This is not a Motion for a Stay of Execution of an Injunction. Rather, Petitioner is

---

[4] LeCroy's reference to the All Writs Act, discussed further below, does not exempt him from satisfying these requirements. The Eleventh Circuit has warned against using the Act "to evade the requirements for preliminary injunctions" that otherwise govern, such as those in Fed. R. Civ. P. 65. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005). Likewise, the Supreme Court has vacated stays of execution entered under the All Writs Act that did not satisfy the usual stay requirements, including a probability of success on the merits. *See Dunn v. McNabb*, 138 S. Ct. 369 (2017). In fact, the Supreme Court has vacated all three of the most recent execution-halting injunctions that the Eleventh Circuit affirmed under the Act. *See id.*; *Dunn v. Borden*, 138 S. Ct. 312 (2017); *Dunn v. Melson*, 137 S. Ct. 2237 (2017). But even in those three cases—where the Eleventh Circuit approved of an injunction that was later vacated by the Supreme Court—the inmates were actively litigating claims that would have been be rendered moot by the execution. LeCroy, by contrast, has no pending claims in any other court.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

asking that the Court schedule Mr. LeCroy's execution for a date certain in Spring 2021."). But an order from this Court delaying or rescheduling the Executive Branch's already set execution date would do precisely that: stop the government from carrying out a lawful action currently authorized by the judgment of conviction and sentence in this case. *Cf. Nken*, 556 U.S. at 428-29. LeCroy is simply trying to skirt the showing required to obtain equitable relief—the only type of remedy potentially available to him. And LeCroy cites no decision where a court has exercised authority to postpone or reset an execution date in the manner he requests. To the contrary, since federal executions resumed this year, both district courts to consider such requests have rejected them. *See United States v. Lee*, No. 4:97-cr-00243, 2020 WL 3921174, at *5 (E.D. Ark. July 10, 2020); Order, *United States v. Honken*, No. CR01-3047, at 7-8 (N.D. Iowa July 14, 2020) (Doc. 822) (*Honken* Order). This Court should reach the same result.

### B. LeCroy's Arguments Under BOP Regulations and the All Writs Act Lack Merit.

Neither of the sources that LeCroy invokes—BOP regulations and the All Writs Act, 28 U.S.C. § 1651(a)—authorizes this Court to postpone or reschedule the execution in the circumstances of this case.

1. LeCroy first relies (Doc. 593 at 6-7) on the provision in the 1993 regulations stating that the BOP can set the date and time of an execution "[e]xcept to the extent a court orders otherwise." 28 C.F.R. § 26.3(a). Far from establishing that a court has unbridled discretion to override the BOP's action after it has set an execution date, the "except" clause is merely a recognition that both the Judiciary and the Executive Branch have authority to set a date during the implementation of a capital sentence. Thus, the provision is consistent with the Judiciary's long-standing concurrent—not exclusive—ability to set an execution date initially before the Executive Branch sets a date.

The proviso in Section 26.3(a) does contemplate that a court may, for example, issue a stay of execution, provided that a petitioner makes the required showing. But LeCroy provides no support for the assertion that the 1993 regulations give a district court absolute discretion to change an execution date already set by the Executive Branch. Nor has LeCroy identified any historical practice permitting a federal court to reschedule an execution date lawfully set by the Executive Branch as an exercise of discretion, and the government is not aware of any such precedent. In short, the 1993 regulations do not recognize, let alone

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

create, judicial authority to countermand a lawful execution date set by the Executive Branch.[5]

Indeed, if LeCroy's theory were correct, then defendants in his position would never have to meet the stringent standards for obtaining a stay in order to delay an execution. Under LeCroy's view, a defendant in his position could always ask for such a delay simply as an exercise of the court's discretion, rather than seek equitable relief through a stay. Federal executions, however, have never been regarded as such an exception to ordinary stay standards.

2. LeCroy's reliance on the All Writs Act is equally misplaced. LeCroy argues in particular that this Court's orders appointing his attorneys under 18 U.S.C. § 3599(e) contemplate the assistance of counsel through clemency proceedings and that the Act authorizes this Court to reset the execution date because doing so is necessary to make the appointment orders "meaningful." Doc. 593 at 2, 8-9. As explained below, that argument rests on the mistaken premise that

---

[5] LeCroy's arguments concerning the July 2019 Addendum to the BOP Execution Protocol fail for the same reasons. Doc. 593 at 7. Like the 1993 regulations, these newer provisions simply recognize the longstanding principles and procedures that give the Executive Branch and Judiciary concurrent authority to schedule an execution date in the first instance.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

counsel's representation would be "meaningful" only if his lead attorney can meet with him in person or witness his execution. *See* pp. 20-22, *infra*.

Furthermore, the All Writs Act does not confer the type of freewheeling authority to enforce an appointment order under 18 U.S.C. § 3599 that LeCroy posits. The Act authorizes "all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). But the Eleventh Circuit has also made clear that the Act is a "source of federal court power [that] must only be used in extraordinary circumstances." *United States v. Machado*, 465 F.3d 1301, 1308 (11th Cir. 2006) (internal quotation marks omitted), *overruled in part on other grounds in United States v. Lopez*, 562 F.3d 1309 (11th Cir. 2009). And relevant here, courts have rejected the argument that, once counsel is appointed to assist in post-conviction or clemency proceedings, the All Writs Act authorizes the appointing court to enter orders compelling executive officials to take actions that facilitate the clemency process. *See Baze v. Parker*, 711 F. Supp. 2d 774, 780 (E.D. Ky. 2010) (Thapar, J.) (rejecting the argument that an "order granting appointment" under Section 3599(e) is "rendered 'meaningless' simply because habeas counsel receives less than the entirety of all of the information he or she desires," and

declining to enter order under the Act), *aff'd*, 632 F.3d 338 (6th Cir. 2011); *see also Rhines v. Young*, 941 F.3d 894, 895 (8th Cir.) (indicating tentative agreement with the district court's conclusion that it lacked "authority under 18 U.S.C. § 3599 and the All Writs Act, 18 U.S.C. § 1651(a), to order" state prison officials to allow a capital defendant "to meet with mental health experts retained by appointed counsel for purposes of preparing a clemency application") (emphasis omitted), *cert. denied*, 140 S. Ct. 8 (2019). The order that LeCroy requests would be no more supportable than the ones sought and denied in these cases, particularly because he has no clemency application currently pending.

LeCroy's only cited authority on this point—an unpublished order in *Nields v. Bradshaw*, No. 1-03-cv-019, 2010 WL 148076 (S.D. Ohio Jan. 11, 2010)—does not support a contrary result. In *Nields*, a magistrate judge relied on Section 3599(e) and the All Writs Act to order the transfer of a prisoner to a hospital for neurological testing to be used to support a clemency petition. *Id.* at *1-*2. Four days after it issued the order, however, the *Nields* court stayed its order and acknowledged that its authority was doubtful. *Nields v. Bradshaw*, No. 1:03-CV-019, 2010 WL 290963, at *2 (S.D. Ohio Jan. 15, 2010). And since then, the Sixth Circuit has expressly disapproved of *Nields*, "hold[ing]" that it "was wrongly

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

decided." *Baze*, 632 F.3d at 345. *Nields* therefore provides little support for the order that LeCroy seeks here, which would effectively bar Executive Branch officials from carrying out LeCroy's execution on the date they have set and require them to do so instead at a later date selected by the Court.

## II.     Resetting or Modifying the Date of LeCroy's Execution Would Be a Manifest Abuse of Discretion.

Even assuming this Court possesses the authority to replace an execution date set by BOP with a date of its own choosing, and to do so outside the context of a stay or injunction, changing the execution date on the grounds claimed by LeCroy here would represent a manifest abuse of discretion. LeCroy contends he is entitled to such extraordinary relief because (1) two of his counsel currently are unable to meet with him in-person when discussing a potential clemency petition; and (2) two of his counsel currently are unable to attend his execution in-person. Neither contention justifies delaying LeCroy's execution until at least Spring 2021. LeCroy not only fails to identify the violation of any constitutional or statutory right, but the government has an overwhelming interest in the enforcement of a criminal sentence imposed by a unanimous federal jury after a fair trial and upheld after appellate and post-conviction proceedings.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

### A. Counsel's Current Inability to Meet With LeCroy In-Person Does Not Infringe Any Constitutional Right, Statutory Right, or Court Order.

LeCroy first contends that this Court should set a new execution date because two of his counsel currently are unable to meet with him in-person when discussing a potential clemency petition. LeCroy's tardy assertion lacks merit.

As an initial matter, LeCroy's claim does not implicate any constitutional right to counsel. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (Constitution does not require the appointment of counsel for indigent prisoners collaterally attacking their criminal judgments); *see also Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (explaining that where there is no constitutional right to counsel, there can be no deprivation of effective assistance). LeCroy contends that this Court should grant his requested relief based on rights purportedly provided by an order appointing counsel under 18 U.S.C. § 3599. But LeCroy's expansive reading of Section 3599 is unsound.

As relevant here, Section 3599(e) provides that appointed counsel "shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant." LeCroy does not claim that his counsel is unable to represent him in such clemency proceedings,

or that counsel is somehow unable or unwilling to submit a clemency petition on his behalf. Rather, LeCroy suggests that the fact some of his counsel are unable to meet with him in-person to discuss a clemency petition violates his rights under Section 3599(e). But nothing in Section 3599's text confers such a right, and LeCroy points to no decision interpreting Section 3599—or appointment orders analogous to the ones in this case—in such a manner. And for good reason. Section 3599 is designed simply to provide indigent defendants with appointed counsel, *see Harbison v. Bell*, 556 U.S. 180, 186 (2009), not to involve courts in overseeing the details of the clemency process. *See Bowles v. Desantis*, 934 F.3d 1230, 1242 (11th Cir. 2019) (rejecting an argument that the "innocuously worded" Section 3599(e) created a right to federally appointed counsel's appearance before a state clemency board); *Baze*, 711 F. Supp. 2d at 780 ("Because the goal of Sections 3599(a) and (e) is competent representation for indigent death-sentenced petitioners, that goal is served once counsel is appointed.").

In any event, LeCroy's complaints overlook the substantial access to counsel he retains. To begin, LeCroy has ample alternative means to communicate with Mr. Martin and Ms. Michaels about a potential clemency petition, including unmonitored face-to-face videoconferencing. *See* Watson Decl. ¶8. Counsel, in

turn, may make any clemency submissions to the Office of the Pardon Attorney, which is operating remotely and continues to hear oral presentations in support of clemency. Gillespie Decl. ¶4. LeCroy also has access to unmonitored phone calls with counsel, something he has used at least 10 times since March 2020. Watson Decl. ¶7. And LeCroy and his counsel are permitted to request in-person visits if they wish to do so. *Id.* ¶5. In fact, attorney Stephen Ferrell's scheduled in-person meeting with LeCroy would have taken place on August 24, 2020 had Ferrell not cancelled the request. *Id.*

In addition, Mr. Martin and Ms. Michaels have represented LeCroy for over a decade and litigated and investigated his case long before the current pandemic. Indeed, counsel previously filed a petition for clemency on LeCroy's behalf in December 2016. Gillespie Decl. ¶5. That petition was administratively closed without prejudice in January 2017 after LeCroy requested to withdraw his petition. *Id.* Notably, since that time, LeCroy has not submitted a new petition for clemency. Gillespie Decl. ¶6. That is so even though this Court appointed additional counsel nearly 20 months ago, based on a motion stating that additional counsel "would bring requisite expertise, experience, and staffing necessary for the preparation of Mr. LeCroy's federal executive clemency." Doc. 583 at 4.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

22

**B. Counsel's Inability To Witness LeCroy's Execution Does Not Infringe Any Right Conferred by the Constitution, Regulation, or Court Order.**

LeCroy next contends that this Court should set a new execution date because two of his counsel currently are unable to personally witness his execution on the date scheduled by BOP. Once again, LeCroy points to no authority that would justify the exceptional relief he requests.

As an initial matter, there is "no law that would support a right to counsel throughout an execution." *The Estate of Lockett by and through Lockett v. Fallin*, 841 F.3d 1098, 1117 (10th Cir. 2016). Thus, any repercussions from the COVID-19 pandemic on the ability of LeCroy's counsel to be present at the execution would not impinge on LeCroy's constitutional rights.

Contrary to LeCroy's suggestion (Doc. 593 at 12), 28 C.F.R. § 26.4(c) provides no entitlement to having counsel personally present for an execution. That regulation merely specifies who *may* attend an execution; it does not require their attendance for the execution to move forward or create a private right to have them present. While Section 26.4(c) refers to those who "shall be present at the execution," it further mandates that "[n]ot more than" a specified "number[]" of "defense attorneys" (two) or "adult friends or relatives" (three) "selected by the

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

prisoner" "shall be present." 28 C.F.R. 26.4(c)(3). As the Seventh Circuit recently determined, the regulation's plain language imposes a *limit* on the attendance of potential third-party witnesses, rather than bestowing any right for them to attend. *See Peterson v. Barr*, 965 F.3d 549, 553 (7th Cir. 2020), *stay denied*, 2020 WL 3964236 (S. Ct. July 14, 2020). Were it otherwise, any of the permissible witnesses the regulation identifies—including "friends or relatives" of the condemned—could obstruct an execution by asserting a scheduling conflict.

LeCroy's reliance on the FDPA and Georgia law (Doc. 593 at 12) is also misplaced. The FDPA provides that an execution shall be "implement[ed] . . . in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). That provision, LeCroy contends, incorporates Georgia law provisions governing the presence of defense counsel at his execution— specifically, O.C.G.A. § 17-10-41. According to LeCroy, the D.C. Circuit's decision in the *Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir.) (per curiam), cert. denied, No. 19-1348 (June 29, 2020), supports this interpretation of the FDPA.

It does not. Both the text of Section 3596(a) and the D.C. Circuit's reasoning contradict LeCroy's assertion. Section 3596(a) incorporates only the "manner" of implementing the death sentence prescribed by state law. As Judge Katsas has

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

explained, the best reading of "manner" captures only the "top-line choice among execution methods such as hanging, electrocution, or lethal injection." *Execution Protocol Cases*, 955 F.3d at 113 (Katsas, J., concurring). Even the dissenting D.C. Circuit judge would not have extended the FDPA as far as LeCroy asks this Court to go. In that judge's view, the FDPA does not require the government to follow "'every nuance'" of a state procedure, but rather only "those procedures that 'effectuat[e] the death,' including choice of lethal substances, dosages, vein-access procedures, and medical-personnel requirements." *Execution Protocol Cases*, 955 F.3d at 151 (Tatel, J., dissenting) (citation omitted).

Indeed, as every court of appeals to have interpreted this provision has held, "Section 3596(a) cannot be reasonably read to incorporate every aspect of the forum state's law regarding execution procedure." *Peterson*, 965 F.3d at 554; *see United States v. Mitchell*, No. 20-99009, 2020 WL 4815961, at *2-*3 & n.6 (9th Cir. Aug. 19, 2020); *Execution Protocol Cases*, 955 F.3d at 112; *see also Barr v. Roane*, 140 S. Ct. 353, 353 (2019) (statement of Alito, J.). Instead, those courts have held that the "manner" of "implementation" of a death sentence under Section 3596(a) "addresses, at most, state laws that set forth procedures for giving practical effect to a sentence of death," such as "choice of lethal substances, dosages, vein-access

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

procedures, and medical-personnel requirements." *Mitchell*, 2020 WL 4815961, at *2. In *Peterson*, the Seventh Circuit specifically considered state law requirements for witnesses to the execution and explained that the word "manner" as used in Section 3596(a) "concerns how the sentence is carried out, not who watches." 965 F.3d at 554. This Court should follow the same approach here.

Even if the FDPA incorporated Georgia law regarding witnesses, O.C.G.A. § 17-10-41 would not provide a basis for relief. As relevant here, O.C.G.A. § 17-10-41 provides that "the convicted person may request the presence of his or her counsel, a member of the clergy, and a reasonable number of relatives and friends, provided that the total number of witnesses appearing at the request of the convicted person shall be determined by the commissioner of corrections." In other words, O.C.G.A. § 17-10-41 does not require the presence of counsel, nor does it create a right to the presence of particular counsel where the defendant is represented by multiple lawyers. Nothing in O.C.G.A. § 17-10-41, or any case interpreting it, suggests that attendance by counsel of the convicted person's choice is required for the execution to go forward.

\* \* \*

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

The government respects Mr. Martin's keen sense of duty to his client and acknowledges that the travel limitations stemming from his health and the COVID-19 pandemic are unfortunate. But those limitations do not create or otherwise establish a violation of LeCroy's constitutional or statutory rights or this Court's appointment orders. The government is not preventing LeCroy from visiting with his available attorney in-person; it has provided alternative means for communicating with lead counsel (who may, in turn, make remote presentations to the Pardon Attorney); and LeCroy's third attorney may attend his execution should he so choose. Even if this Court had discretion to reset an execution date, therefore, the circumstances here do not support that extraordinary step. *See Lee*, 2020 WL 3921174, at *5 (declining to reset execution date in light of the pandemic where "Congress has not suspended executions[, t]he Executive Branch believes it is worth moving ahead," and "when a delay would have to be a long one to do any good"); *Honken* Order, at 8 (noting the defendant's "concerns regarding access to counsel," but explaining that he argued only "that he has not had ideal access (i.e., in person meetings)," and deferring to "the branch of government tasked with carrying out the execution" because "it is in the best position to weigh the risks associated with COVID-19 and the benefits of proceeding with the execution").

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

### C. The Government Has an Overwhelming Interest in Proceeding with LeCroy's Execution as Scheduled by BOP.

Finally, any exercise of the Court's discretion would be especially unwarranted given the countervailing interests at stake. The government has an overwhelming interest in the timely enforcement of criminal sentences, such as LeCroy's, imposed by unanimous federal juries after fair trials that have been upheld through appellate and post-conviction proceedings in federal courts. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019). Once post-conviction proceedings "have run their course," as they have here, "finality acquires an added moral dimension." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998). Consequently, delay "inflict[s] a profound injury to the 'powerful and legitimate interest in punishing the guilty,' an interest shared by the State and the victims of crime alike." *Id.* (quotation marks omitted). Unduly delaying executions can also frustrate the death penalty by undermining its retributive and deterrent functions. *See Bucklew*, 139 S. Ct. at 1134; *id.* at 1144 (Breyer, J., dissenting).

The government's interest in implementing LeCroy's sentence is magnified by the heinous nature of his crimes. Only 47 days after being released from previous terms of state and federal imprisonment, LeCroy broke into Joann

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

Tiesler's home and awaited her return. *LeCroy*, 441 F.3d at 918-20. Once she arrived home, LeCroy did not just take her keys and vehicle to accomplish his plan of absconding from federal supervision; he violently attacked and killed Ms. Tiesler—binding her wrists and ankles with plastic cables, raping her, anally sodomizing her, strangling her with an electrical cord, slitting her throat with a knife, creating a gaping wound from which she bled to death, and plunging his knife into her back five times as she lay face down in her own blood. *Id.* at 919-20.

LeCroy has had ample opportunity to litigate his conviction and sentence and has done so. His conviction and death sentence have been upheld on direct appeal and post-conviction review. *LeCroy*, 441 F.3d at 914-31; *LeCroy*, 739 F.3d at 1297. And his current request for relief—which he filed more than three weeks after he received notice of his execution date and less than a month before that date—does not "justify last-minute intervention by a Federal Court," which the Supreme Court recently made clear "'should be the extreme exception, not the norm.'" *Barr v. Lee*, No. 20A8, 2020 WL 3964985, at *2 (U.S. July 14, 2020) (quoting *Bucklew*, 139 S. Ct. at 1134); *see also Barr v. Purkey*, No. 20A10, 2020 WL 4006821, at *1 (U.S. July 16, 2020) (also vacating preliminary injunction entered by court before

which inmate still had pending claims). No further delays in carrying out LeCroy's

lawful sentence are justified.

## CONCLUSION

For the foregoing reasons, LeCroy's motion (Doc. 593) should be denied.

Respectfully submitted,

| | |
|---|---|
| BYUNG J. PAK | SCOTT A.C. MEISLER |
| *United States Attorney* | PAUL T. CRANE |
| Northern District of Georgia | *Attorneys, Appellate Section* |
| | Criminal Division |
| CAROLYN "TIPPI" CAIN BURCH | U.S. Department of Justice |
| *Assistant United States Attorney* | 950 Pennsylvania Ave., N.W. |
| Northern District of Georgia | Washington, D.C. 20530 |
| Georgia Bar No.: 094515 | scott.meisler@usdoj.gov |
| tippi.burch@usdoj.gov | paul.crane@usdoj.gov |

August 28, 2020

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

## CERTIFICATE OF COMPLIANCE AND SERVICE

I hereby certify that this document was prepared using Book Antiqua 13 point font, and that I have caused a copy to be electronically filed with the Clerk of Court using the CM/ECF system, which automatically sends notification to the parties and counsel of record.

August 28, 2020

/s/ CAROLYN "TIPPI" CAIN BURCH
ASSISTANT UNITED STATES ATTORNEY